Bertha **SNYDER**, as Administratrix ad Prosequendum for the heirs-at-law of Joseph Edward Burke, deceased; as Administratrix of the Estate of Joseph Edward Burke, and individually, Plaintiff,

v.

Peter **BAUMECKER**; County of Hunterdon; State of New Jersey, Department of Corrections; Carl Frick; John Doe; Bruce Baker; Alan Williamson; and William C. Buchanan, Defendants.

Civ. No. 88–3822(CSF).

United States District Court, D. New Jersey.

March 23, 1989.

As Amended March 28, 1989.

Carter, Van Rensselaer & Caldwell by William J. Caldwell, Clinton, N.J., for plaintiff.

Lenox, Socey, Wilgus, Formidoni & Casey by Gregory J. Giordano, Trenton, N.J., for defendant Peter Baumecker, M.D.

Widman & Cooney by Matthew R. Kiffin, Ocean, N.J., for defendants County of Hunterdon, Carl Frick, Bruce Baker and Alan Williamson.

Attorney Gen. of New Jersey by Catherine M. Brown, Deputy Atty. Gen., Trenton, N.J., for defendant State of N.J., Dept. of Corrections.

Tompkins, McGuire & Wachenfeld by William J. Murray, Newark, N.J., for defendant William Buchanan.

## OPINION

CLARKSON S. FISHER, District Judge.

On July 16, 1986, Joseph Burke was incarcerated on charges of motor vehicle and traffic law violations at the Hunterdon County Jail in Flemington, New Jersey. On August 11, 1986, an appearance and a not guilty plea were entered on Burke's behalf by his court-appointed attorney, William Buchanan. Burke remained in custody pending the posting of bail. Shortly thereafter, Burke became severely depressed and exhibited abnormal and potentially self-destructive behavior. As a result, he was placed under the care of a psychiatrist, segregated from the general population and ultimately placed on a 30-minute watch. Despite the segregation and close supervision by correction officers at the Hunterdon County Jail, Burke attempted suicide on October 5, 1986, and remained comatose until his death, on October 21, 1986, at the Hunterdon Medical Center.

Plaintiff, Bertha Snyder, as the Administratrix ad Prosequendum for the heirs-at-law of Joseph Burke and the Administratrix of the Estate of Joseph Burke, institut-

ed this action on September 6, 1988. The complaint names the following defendants: Peter Baumecker, M.D., the psychiatrist who treated the deceased during his incarceration; William Buchanan, the attorney appointed to represent the deceased; the Department of Corrections of the State of New Jersey (the "Corrections Department"); the County of Hunterdon; Carl Frick, Warden of the Hunterdon County Jail; and Bruce Baker and Alan Williamson, corrections officers at the Hunterdon County Jail (the "County defendants").[1] In short, the complaint alleges that the decedent's injuries and ultimate death were the direct result of the defendants' negligent supervision and deliberate and callous indifference to his medical needs. As Administratrix, on behalf of the estate and heirs-at-law of Joseph Burke, plaintiff asserts a civil rights claim pursuant to 42 U.S.C. § 1983, pendent state law claims grounded in negligence, and medical and legal malpractice claims, as well as a claim on her own behalf for the intentional and negligent infliction of emotional distress suffered as the result of observing the decedent's bodily injuries.

Presently before the court are several motions, filed by the defendants, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Specifically, the Corrections Department asserts eleventh amendment immunity as an agency of the State of New Jersey. The County defendants contend that the complaint fails to state a claim under 42 U.S.C. § 1983, thus stripping this court of jurisdiction to hear the pendent state law claims.[2] Defendant William Buchanan also asserts that the allegations of the complaint fail to state a claim against him under negligence or legal malpractice. In response, plaintiff has filed a cross-motion seeking to amend the complaint to name William H. Fauver, Commissioner of the Corrections Department, as a party defendant; to request prospective injunctive relief; and to allege diversity jurisdiction. The court will address each of these motions in order.

*Standard of Review*

In ruling upon a Rule 12(b)(6) motion, the factual allegations in the pleadings are to be accepted as true, *Estelle v. Gamble,* 429 U.S. 97, 99, 97 S.Ct. 285, 288, 50 L.Ed.2d 251 (1976), and any reasonable inferences which can be drawn therefrom should be viewed in a light most favorable to the pleader. *District Council 47, Am. Fed'n of State, County and Mun. Employees v. Bradley,* 795 F.2d 310, 313 (3d Cir.1986). The claim should be dismissed only if "it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

Generally, pleadings are construed liberally. *District Council 47, supra.* In *Scheuer v. Rhodes,* the United States Supreme Court set forth the limits of a review of the adequacy of a pleading under Rule 12(b)(6):

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint

---

**1.** The plaintiff also names as defendant(s) John Doe, one or more fictitious persons, employed at the Hunterdon County Jail, but who are unknown to plaintiff at this time.

**2.** Defendant Peter Baumecker joins in the motion, filed by the County defendants, to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(h)(3).

should be construed favorably to the pleader. 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Furthermore, dismissal for failure to state a claim upon which relief can be granted is disfavored by the courts, and the burden of showing that no claim has been stated is on the moving party. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). It is from this premise that the court begins addressing the movants' challenge to the sufficiency of plaintiff's complaint.

*The Corrections Department's Motion to Dismiss*

■ The Corrections Department asserts that the eleventh amendment cloaks a state and its agencies with immunity from suit in federal court. Since the State of New Jersey has not provided its consent to suit for itself or its agencies, the Corrections Department seeks dismissal of the claims alleged against it in the complaint, as well as all crossclaims for indemnification asserted against it by codefendants Peter Baumecker and the County defendants.

The eleventh amendment to the United States Constitution states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The eleventh amendment acts as a constitutional limitation on a federal court's power to entertain an action brought by private parties against an unconsenting state. *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Although the language of the eleventh amendment explicitly covers only suits commenced against a state by citizens of another state or country, it has been extended to encompass actions instituted in federal court against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890); *Spicer v. Hilton,* 618 F.2d 232, 235–36 (3d Cir.1980). It is now well settled that, absent a clear waiver by a state of its eleventh-amendment immunity or a proper congressional abrogation of that immunity, a federal court lacks jurisdiction to hear claims brought by an individual against a state. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

■ In *Edelman v. Jordan,* the United States Supreme Court held that 42 U.S.C. § 1983 was not intended to abrogate the traditional sovereign immunity of the states. 415 U.S. 651, 676–77, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974); *see also Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978); *Skehan v. Board of Trustees,* 590 F.2d 470, 488–91 (3d Cir.1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979) (Skehan III). Thus, absent a state's consent, the eleventh amendment bars a civil rights suit in federal court which directly names the state as a defendant. *Id.; Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). This jurisdictional bar applies regardless of whether the relief sought against a state is monetary or injunctive in nature. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. at 100, 104 S.Ct. at 907; *Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982); *Alabama v. Pugh, supra; Spicer v. Hilton,* 618 F.2d at 236–38.

The eleventh amendment's bar also extends to suits brought against departments or agencies of the state. *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Laskaris v. Thornburgh,* 661 F.2d at 25. At issue is whether the Corrections Department is, in actuality, the alter ego of the State of New Jersey such that the state is the real party in interest when claims are asserted against it. *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. at 464, 65 S.Ct. at 350.

Pursuant to N.J.Stat.Ann. § 30:1B–2, the Corrections Department was established as a principal department of the executive

branch of state government. Its chief executive officer, the Commissioner of Corrections, is appointed by the Governor, with the advice and consent of the Senate. N.J. Stat.Ann. § 30:1B–4. The purpose of the Corrections Department has been defined by the Legislature to be the protection of the public and the care and custody of persons committed to state correctional facilities, both clearly state functions. *See* N.J.Stat.Ann. § 30:1B–3. Based upon the functions and characteristics of the Corrections Department, the court concludes that it is the alter ego of the State of New Jersey and, as such, is immune from suit under the eleventh amendment.[3]

■ Plaintiff does not contest the above characterization of the Corrections Department as a state agency entitled to the protection provided by the eleventh amendment against suits of this kind in federal court. In fact, plaintiff concedes that "[t]he position taken by the Department of Corrections is compelling [and that] [t]he eleventh amendment may bar a suit of this nature against a state agency in federal court." (See Pl. Letter Brief in Opposition to the Motions to Dismiss at 6.) Instead, plaintiff seeks leave to amend her complaint, pursuant to Fed.R.Civ.P. 15(a), to add William H. Fauver, the Commissioner of Corrections, as a party defendant, both individually and in his official capacity, and to request prospective injunctive relief.

The Corrections Department opposes plaintiff's motion for leave to amend, first, on the ground that the facts of this case fail to provide the court with the necessary "case or controversy" to issue a prospective injunction against a possible future harm to someone other than plaintiff. The second ground asserted by the Corrections Department is that the statute of limitations has expired, and the relation-back doctrine, provided for by Rule 15(c), is inap-

plicable because Commissioner Fauver did not have notice within the applicable statute-of-limitations period. Because the court agrees that plaintiff lacks standing to seek prospective injunctive relief, plaintiff's motion to amend the complaint to request this relief is denied. The court thus finds it unnecessary to reach the statute-of-limitations issue.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides, in relevant part:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Thus, under Rule 15(a), a complaint may be amended only once as a matter of right, prior to the filing of an answer, and afterward only by leave of the court. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). Whether to allow an amendment rests within the sound discretion of the district court; however, the court's discretion is circumscribed by the liberal amendment philosophy behind the rule. *Adams v. Gould, Inc., supra; Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

■ Nonetheless, a district court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222

---

**3.** In reaching this conclusion, the court is guided by the decision rendered in *Alabama v. Pugh*, whereby the United States Supreme Court held that a suit by inmates against a similar institution, the Alabama Board of Corrections, was barred by the eleventh amendment. 438 U.S. at 782, 98 S.Ct. at 3057; *see also Evans v. Headley*, 566 F.Supp. 1133, 1240 (S.D.N.Y.1983) (New York Department of Correctional Services is immune from suit in federal court under the eleventh amendment); *Manning v. Pennsylvania Bureau of Correction*, 559 F.Supp. 220, 221 (M.D.Pa.1983) (the Pennsylvania Bureau of Corrections is an arm of the state and thus protected by the eleventh amendment).

(1962); *Adams v. Gould, Inc.,* 739 F.2d at 864. A district court may properly deny leave to amend when amendment would be futile because the claims sought to be asserted are without merit and would not survive a motion to dismiss under Rule 12(b)(6). *Adams v. Gould, Inc., supra; Massarsky v. General Motors Corp.,* 706 F.2d at 125. Thus, it is incumbent upon a federal court to consider on the merits a proposed amendment of a defective allegation prior to determining whether to grant leave to amend. *Kiser v. General Elec. Corp.,* 831 F.2d 423, 427 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988).

Conceding that the monetary claim presently asserted against the Corrections Department is precluded by the eleventh amendment, plaintiff requests leave to amend to add a claim for prospective injunctive relief in each count of the complaint and to add the Commissioner of Corrections as a defendant, individually and in his official capacity. The proposed amendments state the following:

68. Defendant William H. Fauver is an individual and was at all times mentioned domiciled in and a citizen of the State of New Jersey.

69. Defendant William H. Fauver is the Commissioner of the New Jersey Department of Corrections.

70. At all times relevant to the event described, William H. Fauver was acting individually and in an official capacity as Commissioner for the New Jersey Department of Corrections.

71. At all times relevant, Defendant William H. Fauver was acting individually and within such capacity and under color of the statutes, ordinances, rules and regulations of the State of New Jersey and County of Hunterdon.

The court will evaluate the legal sufficiency of the proposed amendments under " 'the same test that is used when the legal sufficiency of a pleading is challenged under Rule 12(b)(6) or (f): [the motion is denied] if there is no set of facts which could be proved under the amendment which would constitute a valid and sufficient claim' " under the applicable law. *Smith v. Anchor Motor Freight Co.,* 428 F.Supp. 21, 22 (M.D.Pa.1976), *quoting* 3 Moore's Federal Practice, ¶ 15.08(4), p. 905 (1974).

As noted above, the eleventh amendment prohibits the exercise of jurisdiction over any claims asserted by plaintiff against the State of New Jersey or the Corrections Department as a department or agency of the state. One important exception, however, has been carved out from the eleventh amendment's doctrine of sovereign immunity: an action challenging the constitutionality of a state official's conduct has been held not to be one against the state. *Ex parte Young,* 209 U.S. 123, 159, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908). In *Young,* the Supreme Court held that because an unconstitutional state law is void, a state official, when enforcing that law, is stripped of his representative character, and thus, the eleventh amendment did not prohibit enjoining the state official, as an individual, from conduct contrary to the "supreme authority of the United States." 209 U.S. at 154–60, 28 S.Ct. at 451–54. Thus, we have the resulting anomaly—although, for the purposes of the eleventh amendment, the suit is against the officer as an individual, his action is still "state action" for purposes of 42 U.S.C. § 1983 and the fourteenth amendment. *Laskaris v. Thornburgh,* 661 F.2d at 26.

The holding announced in *Young* has been given a restrictive interpretation by subsequent decisions. Although a federal court may grant an injunction which regulates a state official's prospective conduct, one that awards retroactive monetary relief is still barred by the eleventh amendment. *Edelman v. Jordan,* 415 U.S. 651, 668–69, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1973); *Laskaris v. Thornburgh,* 661 F.2d at 25–6; *Spicer v. Hilton,* 618 F.2d at 236. This is because an award of retroactive damages against the official is inevitably paid from the state treasury funds and, hence, makes the state the real party in interest. *Edelman v. Jordan, supra.* Of course, the eleventh amendment does not bar an action for damages brought against an official in his individual capacity, as long as the state is not the real party in interest. *Scheuer v.*

*Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Laskaris,* 661 F.2d at 26; *Spicer,* 618 F.2d at 236. When the relief requested is retrospective monetary damages, however, the court must carefully analyze the nature of the proceeding and its effect to determine whether the action is against the state itself, despite the fact that it is filed against nominal state officials. *Scheuer v. Rhodes,* 416 U.S. at 237–38, 94 S.Ct. at 1687; *Laskaris, supra.*

Plaintiff seeks to amend the complaint to add the Commissioner of Corrections as a defendant, individually and in his official capacity. Although plaintiff explicitly seeks prospective injunctive relief against the Commissioner, it is unclear whether plaintiff wishes to assert a claim for monetary damages against the Commissioner in his individual capacity. For the purposes of this analysis, however, the court will assume that plaintiff seeks to assert such a claim. Nevertheless, because the court concludes that plaintiff's proposed amended complaint fails to set forth facts which would entitle her to monetary relief against the Commissioner, plaintiff's motion to amend the complaint in this regard must also be denied.

First, it is clear that plaintiff lacks standing to seek an injunctive order which would govern the future conduct of either the prison officials at the Corrections Department or those at the Hunterdon County Jail. As administratrix, plaintiff stands in the shoes of the decedent and can assert only those rights belonging to him. It is well settled that an inmate does not have standing to sue on behalf of his fellow prisoners, no matter how noble the effort. *Weaver v. Wilcox,* 650 F.2d 22, 27 (3d Cir. 1981). Article III's "case or controversy" requirement mandates that the plaintiff have a personal stake in the outcome of the litigation. *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396–97, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980); *Weaver v. Wilcox, supra.* Where, as here,

a prisoner is no longer subject to the alleged conditions he attempts to correct, a claim seeking injunctive relief must be dismissed for lack of standing. *Weaver v. Wilcox,* 650 F.2d at 27. Thus, plaintiff's claim for prospective injunctive relief against the Commissioner or any of the previously-named defendants simply would not survive a motion to dismiss under Rule 12(b)(6).

■ Second, as noted earlier, as long as the funds do not come out of the state treasury, § 1983 damage suits against an individual defendant are permissible under the eleventh amendment, despite the fact that the individual is a state official. *Spicer v. Hilton,* 618 F.2d at 236. Thus, if properly asserted, the eleventh amendment will not preclude plaintiff from bringing a claim for damages against the Commissioner in his individual capacity. Because both the officials and their subordinates are employees of the same governmental unit, the doctrine of respondeat superior is not available in § 1983 actions, however, and to survive a motion to dismiss, plaintiff must allege that the defendant was personally involved or participated in the alleged wrongs. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *Woods v. Marks,* 742 F.2d 770, 772 n. 6 (3d Cir.1984).

■ Hence, absent some personal involvement on the part of the government official, damages for the actions of a subordinate cannot be imposed on that official. *Goode v. Rizzo,* 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Personal involvement can be demonstrated through allegations of actual knowledge, participation or acquiescence. *Rode v. Dellarciprete,* 845 F.2d at 1207; *Goode v. Rizzo,* 506 F.2d at 550. These allegations, however, must satisfy the specificity requirements of civil rights complaints, and any assertion of knowledge, participation or acquiescence must be made with particularity.[4] *Rode v. Dellarciprete, supra;*

---

**4.** The Third Circuit has repeatedly held that a complaint complies with the heightened specificity standard for § 1983 claims if it alleges the specific conduct violating the plaintiff's rights,

the time and place of the conduct, and the identity of the responsible officials. *See Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988); *Hall v. Pennsylvania State*

*Boykins v. Ambridge Area School District,* 621 F.2d 75, 80 (3d Cir.1980).

The court recognizes that leave to amend should be freely granted, particularly where the amendment would cure an eleventh-amendment pleading defect; however, where the proposed amendment is insufficient to cure the deficiency in the original complaint, a district court need not permit it. *Colburn v. Upper Darby Township,* 838 F.2d at 666. In the instant case, none of the proposed amendments even hint at any personal involvement by the Commissioner in the acts of which plaintiff complains. The amended complaint, as proposed, merely identifies the Commissioner in his individual and official capacity and states that he was acting, at all times relevant, both individually and under state law. Glaringly absent is any accusation, even in conclusory form, of any participation or acquiencence in conduct which resulted in the suicide of plaintiff's decedent.

Moreover, the court has already determined that plaintiff lacks standing to seek the injunctive relief she requests. Even if plaintiff did have standing, however, the complaint again is deficient in that it fails to allege with any specificity that the suicide occurred because of the implementation, by the Commissioner, of an official policy or regulation which violated the decedent's constitutional rights. Thus, plaintiff's proposed amended complaint clearly would not withstand a Rule 12(b)(6) motion to dismiss.

Accordingly, for the reasons stated above, the Corrections Department's motion to dismiss the complaint and the counterclaims against it is granted, and the plaintiff's motion for leave to amend her complaint to add the Commissioner of Corrections and a prayer for injunctive relief is denied.

*The County Defendants' Motion to Dismiss*

The County defendants, joined by defendant Peter Baumecker, M.D., have also moved to dismiss plaintiff's complaint for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(h)(3), respectively. They assert that a § 1983 claim which is based upon the failure to provide needed medical care requires a showing of either conscious intent to harm by withholding medical treatment or a deliberate indifference to a known need for medical care, and that plaintiff's complaint is thus insufficient because it suggests only negligence. Because the County defendants contend that plaintiff's § 1983 cause of action is the only basis upon which this court can assert jurisdiction over plaintiff's claims, they also move to dismiss plaintiff's remaining state law claims for lack of subject matter jurisdiction.

In opposition to this motion, plaintiff argues that the facts, as alleged in the complaint, demonstrate a deliberate and callous indifference to decedent's medical needs which resulted in his death by suicide. Moreover, plaintiff asserts that the allegations in the complaint speak in terms of diversity jurisdiction despite the failure to cite 28 U.S.C. § 1332 as a basis for this court's exercise of jurisdiction. Thus, plaintiff contends that, even absent her § 1983 claim, this court has jurisdiction to hear the remaining state law claims. Plaintiff also requests leave to amend the complaint to correct this typographical omission.

Section 1983 of Title 42 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Police,* 570 F.2d 86, 89 (3d Cir.1978); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922 (3d Cir.1976).

To assert a claim under 42 U.S.C. § 1983, a plaintiff must allege an infringement of a right or privilege secured by the Constitution or laws of the United States. *Davidson v. O'Lone*, 752 F.2d 817, 821 (3d Cir. 1984) (en banc), *aff'd sub nom. Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Ryan v. Burlington County*, 674 F.Supp. 464, 476 (D.N.J.1987), *aff'd*, 860 F.2d 1199 (3d Cir.1988). Plaintiff's complaint asserts a violation of the decedent's rights arising under the eighth and fourteenth amendments.

In *Estelle v. Gamble*, the Supreme Court held that the eighth amendment requires that the government "provide medical care for those whom it is punishing by incarceration," and proscribes conduct by prison officials which is consistent with a "deliberate indifference to the serious medical needs of prisoners." 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976); *see also Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 and n. 31 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). Although it is well settled that the eighth amendment does not apply to pretrial detainees such as plaintiff's decedent, the Supreme Court has held that the due process clause of the fourteenth amendment requires the government to provide the same medical care to unconvicted persons in its custody as is required for convicted prisoners under the eighth amendment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Monmouth County Correctional Inst. Inmates v. Lanzaro, supra.* Thus, pretrial detainees asserting a § 1983 claim based on the failure to provide needed medical care must meet the two-prong standard announced in *Estelle v. Gamble:* the pretrial detainee must show a serious medical need and a deliberate indifference to that need on the part of prison officials. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979).

The issue presented here is whether the circumstances surrounding decedent's suicide, as alleged in plaintiff's complaint, give rise to a viable claim under 42 U.S.C. § 1983. The court is not without some guidance in making its determination. Although not cited by either party, two cases, *Freedman v. City of Allentown*, 853 F.2d 1111 (3d Cir.1988), and *Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir. 1988), recently decided by the Court of Appeals for the Third Circuit, resolved this precise issue. It is now settled that, under the appropriate circumstances, a prisoner's suicide can give rise to a § 1983 violation. *Freedman v. City of Allentown*, 853 F.2d at 1115; *Colburn v. Upper Darby Township*, 838 F.2d at 667–70.

A prison official's obligation to take reasonable measures to guarantee the safety of inmates includes the obligation to take reasonable precautions to protect an inmate from self-inflicted injury where it is known or should have been known that the inmate was a suicide risk. *Freedman, supra; Colburn*, 838 F.2d at 667–68. While prison custodians do not have the burden of guaranteeing that inmates will not commit suicide, the fourteenth amendment does impose upon them an obligation not to act with reckless indifference to a prisoner's vulnerable mental state when the officials know or should know of that prisoner's suicidal tendencies. *Freedman v. City of Allentown*, 853 F.2d at 1115; *Colburn v. Upper Darby Township*, 838 F.2d at 669.

To survive a motion to dismiss, however, the complaint must do more than merely allege, in conclusory fashion, that the defendants' conduct was "intentional" or "deliberate" or "in reckless indifference to the inmate's rights." *Freedman, supra.* Instead, the plaintiff must plead facts which, when viewed in a light most favorable to plaintiff, support the conclusion that plaintiff's claim is a constitutional violation, rather than simply a claim sounding in negligence. *Freedman v. City of Allentown*, 853 F.2d at 1115. Thus, "when the factual scenario presented by plaintiff suggest that defendants [knew or] should have known that the prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Freedman, supra.*

In the instant case, plaintiff alleges that the prison officials charged with the care and custody of the decedent were on notice that he posed a serious suicide risk and that, while some affirmative steps were taken to observe decedent and prevent any self-inflicted harm, the chosen medical care "constituted a gross deviation from accepted medical standards and displayed a reckless disregard for the health, welfare and safety of decedent." *See* Pl.Compl., ¶ 52. Specifically, plaintiff alleges the following pertinent facts: 1) that shortly after his incarceration, decedent became increasingly depressed, reduced his food intake and remained, for the most part, isolated in his room; 2) that his mental state further deteriorated to the point that he began urinating on the floor, suffered cigarette burns on his feet and was observed to behave in an intermittently calm and hysterical manner; 3) that because of his unusual and self-destructive behavior, decedent was placed in segregation; 4) that, fearing for decedent's safety, corrections officers placed him on a 15–minute suicide watch and put him under the care of a psychiatrist; 5) that decedent was diagnosed as a severe alcoholic requiring alcohol counseling and was placed on a 30–minute suicide watch; 6) that, in accordance with the 30–minute watch, decedent was observed on October 5, 1986, at 6:00 P.M. and 6:30 P.M., at which time he had failed to eat his dinner and was loudly repeating the Lord's Prayer; and 7) that at 6:45 P.M. on October 5, 1986, just 15 minutes after the last watch, decedent was observed hanging in his cell by another inmate, who was playing basketball in the exercise yard. *See* Pl. Compl., ¶¶ 34–55.

The line between what constitutes mere negligence and what constitutes deliberate indifference for purposes of a constitutional claim arising under § 1983 is difficult to draw. Certainly, the denial of a reasonable request for medical treatment, the intentional refusal to provide needed medical care where that need is known or the purposeful delay in providing this care has been held to constitute deliberate indifference. *See Monmouth County Correction-*

*al Inst. Inmates v. Lanzaro*, 834 F.2d at 346. On the other hand, mere allegations of malpractice or negligence have consistently been held not to raise issues of constitutional import. *Id.; see also Estelle v. Gamble*, 429 U.S. at 106 and n. 14, 97 S.Ct. at 292 and n. 14.

Viewing the facts alleged in a light most favorable to plaintiff, the court is compelled to conclude that the allegations pleaded in the complaint suggest nothing more than mere negligence and do not make out a viable claim under 42 U.S.C. § 1983. The facts alleged to support plaintiff's conclusion that the defendants acted with callousness and indifference to decedent's serious medical and psychiatric needs show, instead, that defendants, once aware of decedent's mental state, took affirmative steps to isolate him, to provide needed psychiatric care and to place him under a suicide watch to prevent the very tragedy which occurred. The decision to place decedent on a less frequent watch or the failure to recognize that closer observation was needed suggests only negligence, if anything, and does not demonstrate the kind of deliberate conduct or callous indifference necessary to support a § 1983 claim. Thus, plaintiff's § 1983 claim must be dismissed for failure to state a claim.

Contrary to the County defendants' contention, however, dismissal of the § 1983 cause of action does not terminate this court's jurisdiction over plaintiff's remaining claims. Even a cursory review of the complaint reveals that plaintiff has properly alleged a separate basis, *i.e.,* diversity jurisdiction, for this court's exercise of jurisdiction over the state-law claims. Plaintiff has clearly alleged that this suit is between citizens of different states (plaintiff is a resident of the state of Florida, and all defendants reside in the state of New Jersey), and that the amount in controversy is over the jurisdictional limit of $10,000.00. *See* Pl.Compl., ¶¶ 5–9. The failure to cite 28 U.S.C. § 1332 as a basis for jurisdiction is a technical defect and cannot be used to defeat jurisdiction otherwise properly as-

**1462**

serted.[5] Plaintiff's motion to amend the complaint in this regard is thus granted.

Accordingly, the County defendants' motion to dismiss plaintiff's § 1983 claim for failure to state a claim is granted, and plaintiff's motion for leave to amend her complaint to assert 28 U.S.C. § 1332 as a basis for jurisdiction is also granted.

*Defendant William C. Buchanan's Motion to Dismiss*

Contending that the facts, as pleaded, fail to state a claim for legal malpractice, defendant William C. Buchanan, the attorney appointed to represent decedent, has also moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint against him.[6] Defendant first argues that there is no duty owed by an attorney to prevent the suicide of his client. Second, defendant contends that, even assuming a duty existed whereby an attorney assumes an obligation to protect his client from self-harm, breach of that duty does not constitute legal malpractice. Plaintiff asserts, however, that defendant did, in fact, owe the decedent a duty to advocate his client's interests properly and that defendant's breach of that duty not only proximately caused his death, by suicide, but also caused the decedent pain and suffering prior to his death.

In her complaint, plaintiff alleges that defendant negligently delayed the prosecution of decedent's criminal defense, failed to visit decedent during the time he was incarcerated and refused to render any assistance until his legal fees had been paid, despite the fact that he was a court-appointed attorney and had assumed primary responsibility as counsel for decedent. *See*

Pl.Compl., ¶¶ 33, 40–42. According to plaintiff, defendant's conduct was a gross deviation from accepted legal practice and procedure and, thus, constitutes legal malpractice. Moreover, plaintiff asserts that defendant's alleged negligent representation not only led to decedent's continued incarceration, but was a direct cause of the emotional distress decedent suffered, and his eventual suicide.

As a basis for recovery, plaintiff relies principally on a theory of legal malpractice. Legal malpractice actions are traditionally based on the tort of negligence. *Gautam v. DeLuca*, 215 N.J.Super. 388, 398, 521 A.2d 1343 (App.Div.1987). Under New Jersey law, to recover on a theory of legal malpractice, a plaintiff must establish the following elements: 1) the existence of an attorney/client relationship, placing a duty of care upon the attorney; 2) the breach of such duty; and 3) proximate causation. *Albright v. Burns*, 206 N.J.Super. 625, 632, 503 A.2d 386 (App.Div. 1986). In *Lamb v. Barbour*, the appellate division of the New Jersey Superior Court set forth the following standard for judging an attorney's professional conduct:

> Although not a guarantor against errors in judgment, *Morris v. Muller*, 113 N.J.L. 46, 50 [172 A. 63] (E & A 1934), an attorney is required to exercise on his client's behalf the knowledge, skill and ability ordinarily possessed and employed by members of the legal profession similarly situated and to utilize reasonable care and prudence in connection with his responsibilities.

**5.** The court notes that this decision is without prejudice to the defendants' right to move to dismiss for lack of jurisdiction should discovery reveal that the appointment of Bertha Snyder as administratrix was for the sole purpose of creating diversity jurisdiction.

**6.** Because defendant has filed his Rule 12(b)(6) motion to dismiss after filing his answer, the court will treat it, instead, as a motion for judgment on the pleadings, pursuant to Fed.R. Civ.P. 12(c). *See Angleton v. Pierce*, 574 F.Supp. 719, 723 n. 1 (D.N.J.1983), *aff'd mem.*, 734 F.2d 3 (3d Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984). In considering a

motion for judgment on the pleadings under Rule 12(c), all of the well-pleaded allegations of fact of the opposing party are accepted as true, and the motion should be granted only if these facts, when viewed in a light most favorable to the opposing party, do not state a claim for which relief can be granted. *Id., citing* 2A J. Moore & J. Lucas, Moore's Federal Practice, § 12.15 at 2343 (2d ed. 1983). The court notes that the affidavit submitted by defendant in support of his motion proffers no new facts and has attached, as exhibits, only the complaint and the answer. No matters outside the pleadings have been considered by the court.

188 N.J. Super. 6, 12, 455 A.2d 1122 (App. Div.1982), *certif. denied,* 93 N.J. 297, 460 A.2d 693 (1983).

An attorney's professional obligations include the duty to timely file and prosecute the claims of his client. *Gautam v. DeLuca,* 215 N.J.Super. at 396, 521 A.2d 1343; *Hoppe v. Ranzini,* 158 N.J.Super. 158, 163–64, 385 A.2d 913 (App.Div.1978). When that duty is breached, the attorney is liable only for those losses which are proximately caused by his negligent inaction. *Lieberman v. Employers Ins. of Wausau,* 84 N.J. 325, 341, 419 A.2d 417 (1980); *Gautam v. DeLuca,* 215 N.J.Super. at 397, 521 A.2d 1343; *Lamb v. Barbour,* 188 N.J.Super. at 12, 455 A.2d 1122. The burden of demonstrating a causal connection between an attorney's negligence and his client's loss rests on the client. *Lieberman v. Employers Ins. of Wausau, supra; Gautam v. DeLuca, supra; Lamb v. Barbour, supra.* This burden is met when the client can show that the attorney's negligent conduct is a substantial contributing factor in causing the loss. *State of New Jersey v. Jersey Central Power & Light Co.,* 69 N.J. 102, 110, 351 A.2d 337 (1976); *Lamb v. Barbour,* 188 N.J.Super. at 12, 455 A.2d 1122.

This litigation presents two novel issues for determination by the court. The first—whether an attorney may be held liable for his client's suicide when that suicide has allegedly resulted from the attorney's negligent representation—is an issue of first impression in New Jersey. The parties have not presented, and the court's research has not uncovered, any New Jersey case law which addresses this issue. In fact, after extensive research, it appears to the court that only two courts have ever directly faced this question. Both have answered it in the negative.

In *McLaughlin v. Sullivan,* 123 N.H. 335, 461 A.2d 123 (1983), the New Hampshire Supreme Court denied a wrongful-death claim brought against an attorney when his client committed suicide following a criminal conviction which allegedly resulted from the attorney's negligent representation. Following the reasoning of the *McLaughlin* court, the Pennsylvania Superior Court, in *McPeake v. Cannon,* —— Pa.Super. ——, 553 A.2d 439 (1989), recently held that, as a matter of law, an attorney's duty to provide adequate representation to his client does not encompass the duty to foresee and protect a client from his own suicidal tendencies, and thus an attorney cannot be held liable, on a theory of legal malpractice, for his client's subsequent suicide. This court finds both decisions persuasive and concurs.

First, because of its deliberate and intentional nature, the act of suicide has generally been recognized as an intervening act which is not foreseeable, and thus cannot be proximately caused by a party's ordinary negligence. *McLaughlin v. Sullivan,* 461 A.2d at 124; *McPeake v. Cannon,* —— Pa.Super. at ——, 553 A.2d 439. An exception to this rule has been carved out, however, where it is foreseeable that a person, because of a known mental state, is in danger of inflicting self-injury and the defendant has assumed a duty of care to prevent this self-harm. *Cowan v. Doering,* 111 N.J. 451, 462, 545 A.2d 159 (1988). This exception traditionally has been applied to health-care professionals, such as physicians, nurses and others charged with the care and custody of a patient known to harbor suicidal tendencies. *Cowan v. Doering, supra; McLaughlin v. Sullivan, supra; McPeake v. Cannon, supra.*

In determining whether there may be a recovery for failure to prevent a suicide, the Supreme Court of New Jersey has held that the controlling factor is whether the defendant "reasonably should have anticipated the danger that the deceased would attempt to harm himself." *Fernandez v. Baruch,* 52 N.J. 127, 132, 244 A.2d 109 (1968). Because an attorney is trained to handle only those matters which require legal expertise and lacks the professional skills needed to diagnosis a client's mental state or to determine the proper response to that mental state, both the *McLaughlin* and *McPeake* courts held that a client's suicide is not a foreseeable risk of legal malpractice. *See* 461 A.2d at 126; —— Pa.Super. at —— —— ——, 553 A.2d

439. This court agrees. Moreover, because of the potential for exposure to unexpected and unfair liability, and the deterrent effect this would have on an attorney's willingness to represent a despondent criminal defendant, public policy weighs against imposing liability on an attorney for his client's suicide. *McLaughlin, supra; McPeake, supra.* Thus, this court holds that, as a matter of law, an attorney's duty to represent his client vigorously does not include the duty to foresee and prevent that client's suicide.

The remaining novel question is whether plaintiff can recover, on a theory of legal malpractice, damages for the emotional distress suffered by decedent as a result of his loss of liberty. Again, New Jersey case law is silent on this issue. This court, however, was recently faced with the difficult task of determining whether a New Jersey court would permit emotional-distress damages in a legal malpractice action based on a wrongful deprivation of liberty proximately caused by an attorney's negligent misrepresentation. *See Lawson v. Nugent,* 702 F.Supp. 91 (D.N.J.1988). Relying on the weight of authority in other jurisdictions, which hold that "an attorney who commits malpractice is liable for any reasonably foreseeable loss caused by his negligence including emotional distress resulting from the loss of liberty," (*see Wagenmann v. Adams,* 829 F.2d F.2d 196 (1st Cir.1987)), and the current liberal trend of New Jersey courts in permitting emotional-distress damages, this court held that, if proven, such damages were recoverable in an action based on legal malpractice. 702 F.Supp. at 93–95.

In doing so, this court distinguished *Gautam v. DeLuca,* in which the appellate division of the Superior Court of New Jersey held that, absent egregious or extraordinary circumstances, damages for emotional distress were not recoverable in a legal malpractice suit, thus denying plaintiffs emotional-distress damages which were based on an attorney's negligent prosecution of a medical malpractice suit. 215 N.J.Super. at 399, 521 A.2d 1343. In *Gautam v. DeLuca,* however, the attor-

ney/client relationship was predicated on an economic interest, while in *Lawson v. Nugent, supra,* as in the case at bar, the attorney was retained to provide a defense to a criminal prosecution, thus making emotional distress, in the latter situation, a reasonably foreseeable consequence of an attorney's malpractice.

In the instant case, plaintiff alleges that defendant refused to render assistance to decedent because his fees remained unpaid, failed to return plaintiff's phone messages, and did not visit the decedent in jail at any time after his not guilty plea was entered. *See* Pl.Compl., ¶¶ 40–43. If proven, these factors certainly bring this suit within the "egregious or extraordinary circumstances" exception envisioned by the New Jersey appellate division in *Gautam.* Plaintiff will thus be permitted to proceed to prove damages for the emotional distress suffered by decedent which is attributable to the loss of liberty allegedly caused by defendant's negligent representation. The court notes, however, that plaintiff bears the formidable burden of proving that "but for" defendant's alleged legal malpractice, decedent would have obtained his release from prison. Nonetheless, whether a recovery is remote or even unlikely is not the test used in determining whether a pleading can withstand a motion to dismiss. *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686. Plaintiff is entitled to offer evidence to prove her claim.

For the reasons set forth above, defendant's motion for dismissal of the complaint is granted in part and denied in part. An order accompanies this opinion. No costs.

### ORDER

This matter having been opened to the court on motions by Catherine M. Brown, Deputy Attorney General, on behalf of defendant New Jersey Department of Corrections; by the law firm of Widman & Cooney, on behalf of defendants County of Hunterdon, Carl Frick, Bruce Baker and Alan Williamson; by the law firm of Lenox, Socey, Wilgus, Formidoni & Casey, on behalf of defendant Peter Baumecker,

M.D.; by the law firm of Tompkins, McGuire & Wachenfeld on behalf of defendant William C. Buchanan, to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), and cross-motion by Carter, Van Rensselaer & Caldwell, on behalf of plaintiff, Bertha Snyder, to amend the complaint pursuant to Fed.R.Civ.P. 15(a); and the court having carefully reviewed the papers submitted in support thereof and in opposition thereto; and for good cause shown,

IT IS on this 23rd day of March, 1989,

ORDERED that the motion to dismiss the complaint against the New Jersey Department of Corrections is granted and plaintiff's motion to amend the complaint to add William H. Fauver, Commissioner of Corrections, as a party defendant, and a prayer for injunctive relief be and hereby is denied; and it is further

ORDERED that the motion by defendants County of Hunterdon, Carl Frick, Bruce Baker, Alan Williamson and Peter Baumecker, M.D., to dismiss plaintiff's complaint for failure to state a claim is granted only with regard to her 42 U.S.C. § 1983 cause of action, and plaintiff's motion for leave to amend her complaint to assert 28 U.S.C. § 1332 as a separate basis for jurisdiction be and hereby is granted; and it is further

ORDERED that defendant William C. Buchanan's motion to dismiss the complaint against him is hereby granted with regard to that portion of the complaint which seeks damages arising out of the suicide of plaintiff's decedent, but is denied with regard to plaintiff's claim for damages for pain and suffering arising out of decedent's alleged wrongful incarceration.