**Felix CAMPS, et al., Plaintiffs,**

v.

**CITY OF WARNER ROBINS,
et al., Defendants.**

**Civ. A. No. 92–103–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

May 19, 1993.

Charles R. Adams, III, Ft. Valley, GA, Kenneth Earl Lucas, Warner Robins, GA, Peter R. Cates, Macon, GA, for plaintiffs.

Mark A. Skibiel, Macon, GA, Thomas F. Richardson, Macon, GA, James Earl Elliott, Jr., Warner Robins, GA, Eugene P. Chambers, Jr., Virginia Jane Reed, Atlanta, GA, Michael J. Long, Warner Robins, GA, for defendants.

## ORDER

OWENS, Chief Judge.

Before the court is a motion for summary judgment filed by defendant City of Warner Robins and defendants Johnson and Sadlow of the Warner Robins Police Department ("City defendants") and a motion for summary judgment filed by defendants Ezell, Meadows, Serda, and Talton of the Houston County Sheriff's Department ("County defendants"). After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

On Sunday, November 26, 1989, Dale Camps ("decedent") was arrested at 3:20 a.m. by Officer Thomas Lee Herren of the Warner Robins Police Department ("WRPD") for theft of gasoline from a convenience store/gas station. When the decedent was arrested, Herren smelled alcohol on his person.

The decedent was taken to the WRPD to be processed. The WRPD is not a full-time jail, but rather a holding facility used to detain people until they can be processed and released on bond or transferred to a jail. Because the decedent had been arrested on the state charge of theft, it was the practice and policy of the City of Warner Robins to transfer him to the Houston County Jail, a full-time prison facility.

After the decedent was taken to the WRPD, he was very unruly and refused to cooperate with booking procedures, and Herren placed him into a holding cell with some difficulty. Herren then called for backup to help him in transporting the decedent to another facility.

A few minutes later, Officer Michael Earl arrived, and he and Herren went to the decedent's cell. They discovered the decedent standing on a metal bunk with a portion of a red shoelace tied around his neck. The other portion of the shoelace was hanging from a metal grate in the ceiling of the cell. Earl took the decedent down, and aside from some redness on his neck, there were no signs of injury to the decedent.

Earl then attempted to talk to the decedent in an effort to get him to cooperate. However, the decedent stated that he still refused to be processed, and he resisted being handcuffed. He also told the officers to "Shoot me, beat me up, I'm not going, do what you got to do."

The officers led the decedent back to the booking area, where the decedent began hitting his head against the wall and suffered a slight cut on his forehead. He was so unruly that the officers were still unable to get him to comply with booking procedures. Lieutenant Charles Sadlow, who was the supervisor on duty at the WRPD, determined that the decedent did not need medical attention and advised the officers to transport the decedent to the Houston County Jail to be processed and held on his state theft charge.

The decedent was transported to the Houston County Sheriff's Department at 5:36 a.m. Deputy Lisa Ezell was the only officer on duty at the Houston County Jail at this time. Herren advised Ezell that the decedent had been unruly and refused to be processed at the WRPD.

It is undisputed that Herren also gave Ezell some information about the decedent's suicidal behavior at WRPD and that Ezell did not seek any further details from Herren about this behavior. However, there is a dispute as to the amount of information provided by Herren concerning the decedent's suicidal behavior. The City defendants contend that Herren told Ezell that the decedent had actually attempted suicide at WRPD. In contrast, the County defendants contend that Herren merely told Ezell that the decedent had been "acting suicidal."

Thus, for purposes of the City defendants' motion, the court will assume that Herren only stated to Ezell that the decedent had been "acting suicidal" at the WRPD. Then, for purposes of the County defendants' motion, the court will assume that Ezell was aware of the decedent's previous suicide attempt.

After Herren left at 5:39 a.m., Ezell completed a booking report on the decedent and got him changed into prison garb. She also interviewed the decedent and filled out a mandatory receiving/screening form on him, the purpose of which was to determine whether the decedent needed to be medically evaluated or treated for a mental disturbance. She also placed the decedent with the general population of the jail in a cell containing three other inmates. According to Ezell, all of these activities were accomplished in three minutes.[1]

During her screening of the decedent, Ezell found him to be calm and cooperative, and he did not appear to be a suicide risk. However, based upon what Herren had told her, she classified the decedent as suicidal and placed him under a "close watch." Under Houston County policy, a close watch consists of checking on a prisoner on an unsystematic basis, no less frequently than every fifteen minutes.

Ezell's shift ended at 6:00 a.m., and she informed her replacements, Deputies Jessie Meadows and Michael Sipps, that the decedent had been "acting suicidal" at the WRPD and should be put on a close watch. Neither officer sought any further information about the decedent's behavior.

Most of the facts surrounding the decedent's stay in the Houston County Jail for the next thirty-one hours are in dispute. According to Meadows and Sipps, they made frequent checks on the decedent at irregular intervals throughout the day. However, two of the decedent's cellmates contend that these checks were never made, and for pur-

poses of defendants' motion, the court must adopt this version of the facts.

In addition, the decedent's mother, Ruth Camps, claims that she spoke to Meadows on the telephone three times on November 26, 1989. During their first conversation, she told Meadows that the decedent was suicidal and had attempted suicide in a jail on a previous occasion. She made the other two calls to Meadows after receiving distraught calls from the decedent.

During these calls, she expressed great concern over her son's mental state and even asked if she could send a pastor, doctor, or mental health worker to the jail to talk to him. Meadows stated that he could not allow anyone to see the decedent because visitation was not permitted on Sundays without approval from a superior officer. Meadows denies that these conversations took place.

The decedent's cellmates also informed Meadows and Sipps that the decedent was making suicidal threats. At 1:30 p.m., Meadows took the decedent out of his cell and talked to him for a few minutes. According to his cellmates, the decedent continued to threaten suicide throughout the day.

Deputy Ezell arrived for her shift at 6:00 p.m. According to the decedent's cellmates, Ezell checked on their cell only once during the night. She was relieved at 6:00 a.m. on Monday, November 27, 1989, by Meadows and Corporal Debra Serda (now Hinson).

That morning, one of the decedent's cellmates told Serda that he had seen the decedent tie a sheet into knots and affix it to the overhead light. Corporal Serda did nothing in response to this information.

Moreover, the decedent's father, Felix Camps, came to the jail at 10:45 a.m. to see his son, but Meadows refused to permit the visitation. Mr. Camps also asked Meadows to give the decedent a package of cigarettes and to let him know that his father had come

---

1. It is difficult to ascertain what happened between the time at which Officer Herren left the Houston County Jail and the time at which the decedent was taken to his cell. Ezell states that she took the decedent to his cell before the new shift arrived at 5:45 a.m. while Deputies Mead-

ows and Sipps state that the decedent was still in the booking area when they arrived. Because plaintiffs' argument is based on Deputy Ezell's statement, the court has adopted her version of the facts for purposes of these motions.

to the jail to see him. It is undisputed that Meadows did not comply with this request.

At 1:00 p.m. on November 27, the inmates in the jail were released into the common area of the cell block pursuant to standard procedure. Meadows observed the decedent in the cell at this time and noticed nothing unusual about him.

At 1:08 p.m., Meadows heard a call coming from the area in which the decedent's cell was located. He and Serda immediately went to the decedent's cell and saw that the decedent had hung himself with a sheet. They took him down and laid him on the floor on his back. The decedent was unconscious but still breathing and had a pulse at this time. He was taken to the Houston County Medical Center, where he lapsed into a coma. He never regained consciousness.

Ruth and Felix Camps were appointed guardians of his person by the Probate Court of Bibb County on March 9, 1990. He died approximately one year later, on November 14, 1990.

On March 6, 1992, Ruth and Felix Camps were appointed administrators of the decedent's estate and filed suit in this court against two groups of defendants. The first group consists of the City of Warner Robins, George Johnson, individually and as Chief of Police of the Warner Robins Police Department, and Charles Sadlow, individually and as a police officer of the Warner Robins Police Department. Plaintiffs allege that the City defendants violated the decedent's civil rights under 42 U.S.C. § 1983 in failing to provide him proper medical and/or psychiatric treatment and in failing to train officers adequately in dealing with prisoners who are suicide risks.

The second group of defendants consists of H. Cullen Talton, Jr., individually and as Sheriff of Houston County, and Debra Serda, Jessie Meadows, and Lisa Ezell, individually and as officers of the Sheriff's Department of Houston County. Plaintiffs allege that the County defendants violated the decedent's civil rights under 42 U.S.C. § 1983 in failing to provide proper medical and/or psychiatric treatment, in failing to maintain an adequate watch over the decedent, and in failing to train officers adequately. In addition, the decedent's wife, Deborah Camps, has filed a wrongful death claim under state law against all defendants.

## DISCUSSION

The City defendants and County defendants have filed motions for summary judgment in this case. The court heard oral argument on these motions on March 26, 1993. At this hearing, the court requested additional briefs on the question of whether the statute of limitations was tolled in this case. Therefore, the court will address this issue prior to addressing the merits of the summary judgment motions before the court.

## I. STATUTE OF LIMITATIONS

All defendants in this case contend that plaintiffs' federal claims against them are barred by the statute of limitations and that these claims should be dismissed. In addition, defendant Ezell has raised a separate argument based upon the statute of limitations.

### A. All Defendants

In this case, it is undisputed that any alleged constitutional violations committed by defendants against the decedent occurred on November 26 and 27, 1989. It is also undisputed that the decedent was incompetent from November 27, 1989, until he died on November 14, 1990. Furthermore, his parents were appointed guardians of his person on March 9, 1990, and they filed this lawsuit on March 6, 1992.

It is well established that the Georgia two-year limitations period for personal injuries under O.C.G.A. § 9–3–33 applies to § 1983 claims arising in Georgia. *Williams v. City of Atlanta*, 794 F.2d 624 (11th Cir. 1986). As the alleged constitutional violations occurred in November, 1989, and this suit was not filed until March, 1992, it would seem that plaintiffs' claims are barred by the statute of limitations.

However, it is also established that state tolling provisions apply to § 1983 claims as well. *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). O.C.G.A. § 9–3–90(a) deals with per-

sons who are incompetent at the time at which their cause of action accrues:

> [P]ersons who are legally incompetent because of mental retardation or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons.

■ Defendants contend that the decedent was not incompetent when his cause of action against them accrued; therefore, the statute of limitations was not tolled in this case. However, under Georgia law, a cause of action accrues when the injured party has a right to bring a cause of action. *Jankowski v. Taylor, Bishop & Lee,* 246 Ga. 804, 273 S.E.2d 16 (1980).

In the case at bar, plaintiffs allege that all defendants were deliberately indifferent to the decedent's need for medical and psychiatric treatment in violation of the decedent's civil rights. A civil rights action is considered to be a personal injury action, and under Georgia law, a personal injury claim cannot be brought until one suffers an injury. *Shessel v. Stroup,* 253 Ga. 56, 316 S.E.2d 155 (1984).

The decedent suffered no injury until his suicide attempt in the Houston County Jail; thus, this cause of action against defendants did not accrue until his suicide attempt took place. After his suicide attempt, he never regained consciousness and was therefore, mentally incompetent. Hence, he was incompetent at the time at which his cause of action accrued, and the statute of limitations was tolled under § 9–3–90(a). *Chapman v. Burks,* 183 Ga.App. 103, 357 S.E.2d 832 (1987); *Lowe v. Pue,* 150 Ga.App. 234, 257 S.E.2d 209 (1979). Therefore, the decedent's § 1983 claims against the defendants in this case are not barred by the statute of limitations.

## B. Defendant Lisa Ezell

■ Defendant Ezell contends that even if plaintiffs' claims against her were tolled due to the decedent's incompetency under § 9–3–90(a), these claims are still barred by the statute of limitations. According to defen-

dant Ezell, the statute began to run again on March 9, 1990, when the decedent's parents were appointed his legal guardians. While the original complaint in this case was filed on March 6, 1992, within two years of the date of the guardian appointments, defendant Ezell was not named in plaintiffs' claims until plaintiffs filed an amended complaint on October 21, 1992. Thus, defendant Ezell argues, plaintiffs' claims against her are barred.

In *Cline v. Lever Brothers Co.,* 124 Ga. App. 22, 183 S.E.2d 63 (1971), the Georgia Court of Appeals held as follows:

> Where, as a result of an occurrence giving rise to a cause of action, the person injured becomes mentally and physically incapacitated so as to be incapable of acting for himself in carrying on his business and in prosecuting his claim, and where no guardian is appointed for him, the statute of limitation for the bringing of an action is tolled until such time as he regains capacity to act for himself or until such time as a guardian is appointed and actually does act for him. . . .

*Id.* 183 S.E.2d at 66 (emphasis added). Thus, the statute of limitations on the decedent's federal claims against defendant Ezell began to run on March 9, 1990, when Ruth and Felix Camps were appointed his guardians.

However, plaintiffs contend that the statute was again tolled on November 14, 1990, the date on which the decedent died. Under O.C.G.A. § 9–3–92:

> The time between the death of a person and the commencement of representation upon his estate . . . shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years.

On the date of his death, the decedent's federal claims against defendants became claims of the decedent's estate. However, Ruth and Felix Camps were not appointed as administrators of the decedent's estate until March 6, 1992, the date upon which this suit was filed. Until administrators were appointed to represent the decedent's estate, decedent's federal claims against defendants

could not be brought. Section 9–3–92 solves this problem by tolling the statute of limitations on any claims belonging to an estate until representatives of the estate are appointed.

Thus, the statute of limitations on the decedent's federal claims against defendants was tolled between November 14, 1990, and March 6, 1992. The addition of defendant Ezell to plaintiffs' complaint in October, 1992, was well within the statutory time period.

Accordingly, defendants' motions for summary judgment on the ground that plaintiffs' federal claims against them are barred by the statute of limitations are **DENIED.**

## II. THE CITY DEFENDANTS

Plaintiffs have filed claims against Lieutenant Charles Sadlow, individually and in his official capacity, Police Chief George Johnson, individually and in his official capacity, and the City of Warner Robins.

### A. Lieutenant Charles Sadlow

Plaintiffs allege that defendant Sadlow violated the decedent's civil rights when Sadlow ordered that he be transferred to the Houston County Jail rather than to a psychiatric facility or hospital. They contend that Sadlow's failure to send the decedent to a hospital for psychiatric care amounted to deliberate indifference to the decedent's serious psychological needs.[2] Defendants contend first, that there was no constitutional violation in this case, and second, that Sadlow is entitled to qualified immunity.

It is well established that, under certain circumstances, a prisoner's suicide can give rise to a claim under § 1983:

> A prison official's obligation to take reasonable measures to guarantee the safety of inmates includes the obligation to take reasonable precautions to protect an inmate from self-inflicted injury where it is known or should have been known that the inmate was a suicide risk. While prison

custodians do not have the burden of guaranteeing that inmates will not commit suicide, the fourteenth amendment does impose upon them an obligation not to act with reckless indifference to a prisoner's vulnerable mental state when the officials know or should know of that prisoner's suicidal tendencies.

*Snyder v. Baumecker,* 708 F.Supp. 1451, 1460 (D.N.J.1989) (cites omitted).

In order to establish a § 1983 claim in prison suicide cases, a plaintiff must show that the "jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." *Edwards v. Gilbert,* 867 F.2d 1271, 1274–75 (11th Cir.1989) (cites omitted). Furthermore, deliberate indifference requires that there is a "strong likelihood rather than a mere possibility that the self-infliction of harm will occur ... and will not be found to exist in the face of negligence only." *Popham v. City of Talladega,* 908 F.2d 1561, 1563 (11th Cir.1990) (cites omitted).

Hence, a plaintiff is required to establish the following three elements in a prison suicide case: "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference to the detainee's particular vulnerability.' " *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1023 (3d Cir.1991).

In this case, the first two elements have been established as to Sadlow. The decedent attempted suicide while in the WRPD; hence, he had a "particular vulnerability to suicide." Furthermore, Sadlow had been informed of the decedent's suicide attempt and was therefore aware of this vulnerability. Thus, the court needs only to determine whether plaintiff can establish that Sadlow acted with deliberate indifference to the decedent's vulnerability to suicide.

---

2. Plaintiffs also contend that defendant Sadlow was deliberately indifferent in failing to provide the decedent with medical treatment for the head injury he received when he hit his head against the wall. This claim has no merit because a physical injury must be serious in order to establish a claim for inadequate medical treatment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There is no evidence that the wound on the decedent's head was anything more than superficial.

After Sadlow learned of the decedent's suicide attempt, he determined that the decedent did not need immediate medical or psychiatric treatment. There also was no one at the WRPD to perform a medical or psychological examination of the decedent. Consequently, Sadlow decided that the decedent should be immediately transferred to the Houston County Jail, a full-time jail that was much better equipped to deal with problem inmates than the WRPD. Moreover, Sadlow advised his officers to inform the Houston County Jail that the decedent was suicidal.

The court finds that this conduct does not rise to the level of deliberate indifference. Because the officers at the WRPD were unable to process the decedent due to his refusal to cooperate, the decedent had to be transferred somewhere. Sadlow could have sent him either to a hospital or to the Houston County Jail. The fact that Sadlow determined that the decedent should be taken to the jail rather than a hospital is at most negligence.

The District of New Jersey addressed the distinction between deliberate indifference and negligence in *Snyder v. Baumecker,* 708 F.Supp. 1451, 1461 (D.N.J.1989). In *Snyder,* the defendant officers became aware that the decedent posed a serious suicide risk, put him in isolation, provided him with psychiatric care, and placed him on a 15-minute suicide watch. Shortly thereafter, the decedent was diagnosed as an alcoholic and placed on a 30-minute suicide watch. The decedent then committed suicide fifteen minutes after the last watch.

The court found that these facts suggested nothing more than negligence:

The facts alleged to support plaintiff's conclusion that the defendants acted with callousness and indifference to decedent's serious medical and psychiatric needs show, instead that defendants, once aware of decedent's mental state, took affirmative steps to isolate him, to provide needed psychiatric care and to place him under a suicide watch to prevent the very tragedy which occurred. The decision to place decedent on a less frequent watch or the failure to recognize that closer observation was needed suggests only negligence, if

anything, and does not demonstrate the kind of deliberate conduct of callous indifference necessary to support a § 1983 claim.

Likewise, in the case at bar, Sadlow, at most, made an error in judgment in deciding that the decedent should be transported to the Houston County Jail rather than to a hospital. His failure to recognize that the decedent needed immediate psychiatric care does not amount to deliberate indifference. *Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) ("Lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the 14th Amendment would trivialize the centuries-old principle of due process of law."); *see also Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Furthermore, the fact that Sadlow advised his officers to inform Houston County Jail officials that the decedent was acting suicidal further shows that he was not deliberately indifferent to the decedent's suicidal tendencies. Indifference is "apathy or unconcern," *Rellergert v. Cape Girardeau County,* 924 F.2d 794, 797 (8th Cir.1991); and Sadlow's conduct shows that he was concerned for the decedent's well-being. Thus, he did not learn of the decedent's vulnerability and then ignore it, but rather, he made sure that the decedent's new custodians were aware of this vulnerability.

Therefore, defendant Sadlow did not violate the decedent's civil rights, and plaintiffs' claims against Sadlow cannot stand. Accordingly, defendants' motion for summary judgment on plaintiff's federal claims against him in his individual capacity is **GRANTED.**

### B. Police Chief George Johnson

■ Plaintiffs have alleged that defendant Johnson is individually liable for failing to train his officers in suicide prevention. However, this claim is based upon Sadlow's failure to transport the decedent to a hospital or psychiatric facility, and the court has already found that Sadlow's decision did not deprive

the decedent of his constitutional rights. Since any alleged failure to train did not cause a constitutional deprivation in this case, plaintiffs' failure-to-train claim against Johnson must fail. *See Greason v. Kemp,* 891 F.2d 829 (11th Cir.1990) (the failure to train must be "causally related to the constitutional infringement by [defendant's] subordinate").

Accordingly, defendants' motion for summary judgment on plaintiffs' claims against Police Chief George Johnson in his individual capacity is **GRANTED.**

### C. City of Warner Robins

■ Plaintiffs have two grounds upon which to contend that the City of Warner Robins is liable as a municipality in this case. First, they claim that the city failed to train its officers and employees in ways to deal with inmates exhibiting suicidal tendencies. They also contend that the city failed to have a policy in effect for dealing with inmates with suicidal tendencies.

■ A municipality can only be held liable under § 1983 when a plaintiff can show "that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation." *Colburn v. Upper Darby Township,* 946 F.2d 1017, 1027 (3d Cir.1991) (citing *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978)).

However, as was discussed above, plaintiffs' claims against the City are all based upon the fact that the decedent was transported to the Houston County Jail rather than to a psychiatric facility or hospital, and the court has already found that this action did not violate the decedent's constitutional rights. Thus, there can be no causal connection between a deficient policy and decedent's alleged constitutional deprivation, and the federal claims against the City cannot stand. *See Kocienski v. City of Bayonne,* 757 F.Supp. 457, 466 (D.N.J.1991) (" 'If a person has suffered no constitutional injury

at the hands of the individual police officer[s], the fact that the departmental regulations might have authorized the use of [unconstitutional action] is quite beside the point.' ") (quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)).

Accordingly, defendants' motion for summary judgment on the federal claims against defendants Sadlow and Johnson, in their official capacities, and the federal claims against the City of Warner Robins is **GRANTED.**

### III. THE COUNTY DEFENDANTS

Plaintiffs have filed claims against Deputy Lisa Ezell, Deputy Jessie Meadows, Corporal Debra Serda, and Sheriff H. Cullen Talton, Jr., individually and in their official capacities as employees of the Houston County Sheriff's Department.

### A. Individual Liability

#### 1. Deliberate Indifference

Plaintiffs have alleged that Deputies Ezell and Meadows and Corporal Serda were deliberately indifferent to the decedent's psychological needs [3] while he was in their custody and failed to maintain a proper suicide watch over him. As the Fourth Circuit stated in *Buffington v. Baltimore County,* 913 F.2d 113, 120 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991), "[W]here police know that a pretrial detainee is on the verge of suicide, that psychological condition can constitute the kind of serious medical need to which state officials must, under the due process clause, not be deliberately indifferent." *See also Danese v. Asman,* 875 F.2d 1239, 1244 (6th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Colburn v. Upper Darby Township,* 838 F.2d 663, 669 (3d Cir. 1988).

As the court previously discussed, a plaintiff is required to establish three elements in a prison suicide case: "(1) the detainee had a

---

**3.** Plaintiffs have also alleged that these defendants were deliberately indifferent to the decedent's need for medical attention to his head wound. However, there is no evidence that this

injury was anything more than a cut or scrape. Therefore, it was not a "serious" injury warranting constitutional protection. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference to the detainee's particular vulnerability.'" *Colburn,* 946 F.2d at 1023.

In this case, it is undisputed that the decedent had a particular vulnerability to suicide. However, the other two elements are hotly contested in this case, and, based upon plaintiffs' version of the facts, Deputies Ezell and Meadows and Corporal Serda can be found individually liable.

### a. *Deputy Lisa Ezell*

■ Plaintiffs have presented evidence that Officer Herren of the WRPD told Ezell that the decedent had attempted suicide at the WRPD shortly before he was brought to the Houston County Jail. Therefore, she was aware that the decedent was a suicide risk. Moreover, Ezell sought no further information concerning the suicide attempt, conducted a very cursory evaluation of the decedent, and then placed him in the general population of the jail with access to a means to commit suicide (sheet). Furthermore, while the decedent was supposedly under a "close watch" during her next shift, Ezell only checked on him one time.

A jury could find that these actions amounted to deliberate indifference to the decedent's vulnerability to suicide. *See Lewis v. Parish of Terrebonne,* 894 F.2d 142 (5th Cir.1990) (where warden knew of the decedent's suicidal tendencies and placed him in isolation with access to death dealing instrumentalities, warden's conduct amounted to deliberate indifference).

### b. *Deputy Jessie Meadows*

■ Plaintiffs have presented evidence that Meadows was aware that the decedent was a suicide risk. First, Meadows was advised of decedent's mental state by Ezell. In addition, Mrs. Camps has stated that she spoke with Meadows on the telephone three different times about the decedent's unstable condition. She also asked that a doctor or mental health worker be allowed into the jail to talk with the decedent.

Furthermore, Meadows would not permit Mr. Camps to see the decedent and did not

let the decedent know that his father had attempted to see him. Finally, the decedent's cellmates warned Meadows on several occasions that the decedent was making suicide threats in the cell. Thus, a jury could find that Meadows had knowledge that the decedent was a suicide risk.

Plaintiffs have also presented evidence that Meadows was deliberately indifferent to this risk. According to the decedent's cellmates, Meadows did not check on the decedent at irregular intervals. Thus, although Meadows was aware that the decedent was a suicide risk, he did not maintain a suicide watch and left him in a cell with access to a means to commit suicide. A jury could find that this conduct amounted to deliberate indifference. *Cf. Kocienski v. City of Bayonne,* 757 F.Supp. 457, 464 (D.N.J.1991) (police officer, who was aware of decedent's suicidal tendencies, was not deliberately indifferent to his needs where officer checked decedent's cell at 24–minute intervals.)

### c. *Corporal Debra Serda*

■ Plaintiffs have presented evidence of Serda's knowledge that the decedent was a suicide risk. First, she knew of the situation from her deputies. Second, one of the decedent's cellmates told Serda that the decedent had tied a sheet into knots and affixed it to the overhead light in the cell.

Plaintiffs have also presented evidence that Serda was deliberately indifferent to the decedent's suicide risk. Upon hearing of the decedent's unusual behavior, she did nothing. A jury could find that this amounted to deliberate indifference to the decedent's vulnerability to suicide. *See Gordon v. Kidd,* 971 F.2d 1087, 1095 (4th Cir.1992) (denial of summary judgment sustained where defendant failed to take any action in response to information about decedent's suicidal tendencies.)

### 2. Supervisor Liability

Plaintiffs have also alleged that Sheriff Talton and Corporal Serda are individually liable as supervisors for their failure to train their officers in suicide prevention.

### a. *Sheriff H. Cullen Talton, Jr.*

It is well established that a supervisor cannot be held liable for the § 1983 violations of a subordinate under a theory of *respondeat superior. Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Therefore, to establish a claim against Sheriff Talton in his individual capacity, plaintiff must show that he had some personal involvement in the events surrounding the decedent's suicide attempt. *Snyder v. Baumecker*, 708 F.Supp. 1451 (D.N.J.1989).

In § 1983 cases, courts are to apply a three-prong test in order to determine a supervisor's liability:

(1) whether, in failing adequately to train and supervise subordinates, he was deliberately indifferent to an inmate's mental health care needs;

(2) whether a reasonable person in the supervisor's position would know that his failure to train and supervise reflected deliberate indifference; and

(3) whether his conduct was causally related to the constitutional infringement by his subordinate.

*Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990).

This court can find no causal relation between Sheriff Talton's conduct and the alleged constitutional infringement of his subordinates. There are no allegations that Sheriff Talton was personally involved in any way with the decedent's suicide attempt while in custody at the Houston County Jail. Moreover, plaintiffs have presented no evidence that any failure to train by Sheriff Talton caused this particular injury. Thus, plaintiffs' § 1983 claims against Sheriff Talton in his individual capacity cannot stand. *See Buffington v. Baltimore County*, 913 F.2d 113, 123 (4th Cir.1990) (police chief with no personal involvement in case was not individually liable for failure to train where subordinates failed to follow precinct's official policy.)

Accordingly, Sheriff Talton's motion for summary judgment on plaintiffs' § 1983 claims against him in his individual capacity is **GRANTED.**

### b. *Corporal Debra Serda*

In contrast to Sheriff Talton, Corporal Serda was personally involved with the events surrounding decedent's suicide attempt. Personal involvement can be shown by actual knowledge, participation or acquiescence. *Snyder v. Baumecker*, 708 F.Supp. 1451, 1458 (D.N.J.1989). In this case, it is undisputed that Serda was on duty as the supervising officer on the date upon which the decedent attempted suicide and that she was aware of his suicide risk.

The court finds that plaintiff has presented enough evidence to satisfy the three-prong test for determining supervisor liability against Serda. First, assuming that her subordinates did deprive the decedent of his constitutional rights, a jury could find that she knew or should have known that her subordinates were not adequately implementing the County's suicide prevention policies and that she failed to take any action to remedy the situation. Second, a jury could find that a reasonable person in Serda's position would have known that her conduct amounted to deliberate indifference. Finally, a jury could find that her conduct was causally related to the inadequate care which the decedent received. *See Greason*, 891 F.2d at 838–40.

Thus, plaintiffs have established a claim against Corporal Serda in her individual capacity based upon supervisor liability, and her motion for summary judgment on this issue is **DENIED.**

### 3. Qualified Immunity

The County Defendants contend that even if their actions violated the decedent's constitutional rights, they are entitled to qualified immunity:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Thus, at summary judgment, the court must determine whether the right allegedly violated by defendants was "clearly established at the time an action occurred." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. This right must be clearly established in a "more particularized, and hence, more relevant sense" than an abstract right such as the right to due process. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Furthermore, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

In this case, plaintiffs have presented evidence from which a jury could find that defendants Ezell, Meadows, and Serda were deliberately indifferent to the decedent's vulnerability to suicide and that they failed to take adequate measures to prevent his suicide. By November, 1989, caselaw had clearly established that a jailer has the constitutional duty "to take reasonable measures to protect a prisoner from self-destruction when the jailer knows that the prisoner has suicidal tendencies." *E.g., Gordon v. Kidd,* 971 F.2d 1087, 1097 (4th Cir.1992) (cites omitted); *Rellergert v. Cape Girardeau County,* 924 F.2d 794, 797 (8th Cir.1991); *Lewis v. Parish of Terrebonne,* 894 F.2d 142, 145–46 (5th Cir.1990). Therefore, the constitutional right allegedly violated by defendants in this case was clearly established at the time the violation occurred.

Moreover, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A claim for qualified immunity may be established in such a case only where "extraordinary circumstances" exist that would justify the defendant's actions. *Gordon,* 971 F.2d at 1097.

In this case, defendants have presented no extraordinary circumstances to justify their actions in failing to maintain an adequate suicide watch over the decedent and in leaving him with access to the means to commit suicide. Therefore, they are not entitled to

summary judgment on the issue of qualified immunity. *See Gordon,* 971 F.2d at 1097 (where material issues of fact existed as to whether jailer who ignored an inmate's suicide risk was deliberately indifferent, jailer was not entitled to qualified immunity).

### B. Municipal Liability

Plaintiffs have alleged claims against all County defendants in their official capacities. These claims are essentially claims against Houston County; *Hutton v. Strickland,* 919 F.2d 1531, 1542 (11th Cir.1990); and are based upon two distinct theories: (1) the County has an inadequate policy for suicide prevention and (2) the County has failed to train its employees sufficiently in suicide prevention.

### 1. Suicide Prevention Policy

██ In order to establish municipal liability, plaintiffs must show the following:

> [T]hat the government employees' unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or else is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels."

*Gilmere v. City of Atlanta,* 774 F.2d 1495, 1503 (11th Cir.1985) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

In this case, plaintiffs have failed to identify any policy that caused the alleged constitutional deprivation in this case. The only policy that they have actually identified is the County's policy of refusing to receive into custody inmates who had attempted suicide in another institution without first providing them with medical attention.

However, this policy caused no constitutional violation in this case. Because the decedent had attempted suicide at WRPD, Ezell violated County policy when she admitted him into custody at the Houston County Jail. An employee's failure to follow an es-

tablished municipal policy does not create municipal liability. *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46 (3d Cir.1985).

Plaintiffs have also made a general allegation that the policies in place regarding suicide prevention were "so grossly inadequate ... as to amount to no policies at all." Plaintiffs' Brief in Opposition to Defendants' Motions for Summary Judgment, at 18. This general allegation is insufficient to overcome defendants' motion for summary judgment.

In 1989, the County had a substantial suicide prevention policy set forth in its Houston County Jail Standard Operating Procedures Manual. Under this policy, jail officers are responsible for protecting inmates from suicide. There are also instructions for identifying inmates who pose suicide risks, and any potentially suicidal inmate is to be closely watched and checked by means of unsystematic, frequent patrols.

The court finds that this policy is not facially unconstitutional. *See Schmelz v. Monroe County*, 954 F.2d 1540, 1544 (11th Cir.1992). Furthermore, as plaintiffs allege that the County defendants failed to maintain an adequate watch over the decedent, his injury was not caused by the implementation of the policy. Therefore, municipal liability cannot be based upon the County's suicide prevention policy.

### 2. Failure to Train

■ Plaintiffs also contend that municipal liability can be based upon the County's failure to train its employees in the implementation of its policies in suicide prevention. Plaintiffs specifically claim that the defendant officers were not adequately trained on how to respond to a known suicide risk and on how to provide inmates with information on ways to obtain access to needed medical and/or psychiatric care.

In *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that a municipality can be liable for failure to train its employees only when the failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come in contact." *Id.* at 388, 109 S.Ct. at 1204. In order to succeed on this claim, plaintiffs must establish (1) that the County in fact inadequately trained its deputies in the lawful execution of their duties and (2) that this failure to train was a County policy. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir.1989).

In this case, plaintiffs cannot establish that the alleged failure to train Meadows, Ezell, and Serda in suicide prevention was a County policy. The Houston County Jail Standard Operating Procedures Manual sets out specific measures to be taken for suicide prevention, and jail officers are required to familiarize themselves with this manual.

Under County policy, jail officers are responsible for protecting inmates from suicide. The suicide prevention policy first describes the various types of suicide risks and instructs officers on how to identify these risks. If a known suicide risk is in custody, officers are to maintain a close watch over the inmate such that they check him frequently by means of unsystematic patrols. In addition, items such as sharp objects, shoe strings, sheets, and loose fitting clothing should not be in the possession of new inmates who pose a serious suicide risk.

Plaintiffs also cannot show that a failure to train jail officers on how to provide information to inmates on ways to obtain access to medical and/or psychiatric care is County policy. Under County policy, all inmates are to be made aware of basic jail rules and regulations, and an inmate's right to file medical complaints is a basic rule of the jail.

■ Therefore, if these individual defendants were not adequately trained in these areas, County policy was violated rather than promoted, and a municipality cannot be held liable for an employee's failure to comply with official policy. *City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989); *see also Hinkfuss v. Shawano County*, 772 F.Supp. 1104, 1111–13 (E.D.Wis.1991).

In addition, plaintiffs have not shown that any alleged need for further training in suicide prevention was plainly obvious to County policymakers. There is no evidence that the training program in place in 1989 result-

ed in any suicides prior to the incident involving the decedent. Thus, there is no pattern of similar incidents upon which to base a claim for failure to train. *See City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205.

Hence, plaintiffs' municipal liability claims based upon the County's alleged failure to train its officers in suicide prevention must fail. The policies adopted by County officials show that they are aware of the risk of suicides in prisons and have made an attempt to reduce this risk. Accordingly, defendants' motion for summary judgment on the § 1983 claims against defendants Talton, Serda, Meadows, and Ezell, in their official capacities, is **GRANTED.**

### IV. PENDENT STATE CLAIMS

As summary judgment on all federal claims against the City defendants has been granted, this court declines to exercise supplemental jurisdiction over the pendent state claims against these defendants. 28 U.S.C. § 1391(c)(3); *McDay v. City of Atlanta,* 740 F.Supp. 852 (N.D.Ga.1990), *aff'd,* 927 F.2d 614 (11th Cir.1991). Therefore, these claims are **DISMISSED WITHOUT PREJUDICE.**

In addition, although summary judgment on some of the federal claims against the County defendants has been denied, this court declines to exercise supplemental jurisdiction over the pendent state claims against these defendants as well. Under 28 U.S.C. § 1391(c)(2), the court may decline to exercise supplemental jurisdiction over a pendent state claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."

■ In this case, plaintiff Deborah Camps has joined her state wrongful death claim against the County defendants to Felix and Ruth Camps' § 1983 claim. In a state wrongful death action, a defendant is subject to a standard of negligence while in a § 1983 action, the defendant is subject to the higher standard of deliberate indifference. Because negligence is a lower standard than deliberate indifference, the wrongful death claim substantially predominates over the § 1983 claims in this case. Hence, this court declines to exercise supplemental jurisdiction over plaintiff's pendent state claims against the County defendants, and, consequently, these claims are **DISMISSED WITHOUT PREJUDICE.**

### CONCLUSION

In summary, the court **GRANTS** the City defendants' motion for summary judgment on all federal claims against defendants Sadlow, Johnson, and the City of Warner Robins.

Furthermore, the court **GRANTS IN PART** and **DENIES IN PART** the County defendants' motion for summary judgment on the federal claims against defendants Ezell, Meadows, Serda, and Talton. The court **GRANTS** summary judgment on the federal claims brought against these defendants in their official capacities and on the federal claims against defendant Talton in his individual capacity. However, the court **DENIES** summary judgment on the federal claims against defendants Ezell, Meadows, and Serda in their individual capacities.

Finally, the court **DECLINES** to exercise supplemental jurisdiction over all pendent state claims in this case and **DISMISSES** these claims **WITHOUT PREJUDICE.**

**SO ORDERED.**