Hillsborough
No. 82-301

SHEILA MCLAUGHLIN, ADMINISTRATRIX
OF THE ESTATE OF LAWRENCE MCLAUGHLIN

v.

DOROTHY SULLIVAN

May 9, 1983

*Holland & Aivalikles*, of Nashua (*William E. Aivalikles* on the brief, and *Francis G. Holland* orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Edward B. Mulligan, IV*, on the brief and orally), for the defendant.

BROCK, J. In this interlocutory appeal, we must determine whether an attorney may be held liable for the suicide of a client. We hold that an attorney may not be held liable, and reverse the decision of the Superior Court (*Bean*, J.) denying the defendant's motion to dismiss.

The underlying facts of the case are that in October 1979, the plaintiff's decedent, Lawrence W. McLaughlin, retained the defendant, Dorothy R. Sullivan, Esquire, to defend him against certain criminal charges, specifically, burglary, possession of burglary tools, and two counts of the unauthorized possession of a controlled drug, which had been brought against him in Hillsborough County. Mr.

McLaughlin was found guilty on all four charges after a jury trial in the Superior Court (*Goode*, J.). Mr. McLaughlin was given a two-to-four-year sentence on the burglary charge and the remaining three charges were continued for sentencing. He was then transported to the county jail where, within twelve hours of his arrival, he committed suicide by hanging himself.

The plaintiff administratrix of Mr. McLaughlin's estate first filed an appeal in this court, seeking to overturn the convictions on the ground of ineffective assistance of counsel. We dismissed the appeal because Mr. McLaughlin's death abated his right to appeal. The plaintiff then brought the present wrongful death action against Dorothy Sullivan, Esquire, claiming that Ms. Sullivan had negligently represented the decedent and that, as a result of her legal malpractice, Mr. McLaughlin was wrongfully convicted, was incarcerated, and committed suicide. The plaintiff further claimed that Ms. Sullivan negligently failed to file motions requesting a stay of sentence and/or bail pending appeal, which the plaintiff alleges would have prevented her decedent's post-conviction incarceration and suicide while in jail.

The defendant filed a motion to dismiss the plaintiff's writ, alleging that *even if* she were found to have breached her duty to represent the decedent with adequate professional judgment and skill, such negligence was not the proximate cause of the decedent's suicide, and was not a reasonably foreseeable risk which could result from such a breach of duty. The superior court denied the motion, and the defendant appealed.

■■ As a general rule, negligence actions seeking damages for the suicide of another will not lie because the act of suicide is considered a deliberate, intentional and intervening act which precludes a finding that a given defendant, in fact, is responsible for the harm. *See* Annot., 11 A.L.R.2d 751, 757 (1950); W. PROSSER, LAW OF TORTS § 44, at 280–81 (4th ed. 1971); *see generally* Schwartz, *Civil Liability for Causing Suicide: A Synthesis of Law and Psychiatry*, 24 VAND. L. REV. 217 (1971); Comment, *Civil Liability for Suicide: An Analysis of the Causation Issue*, 1978 ARIZ. ST. L.J. 573. In recent years, however, tort actions seeking damages for the suicide of another have been recognized under two exceptions to the general rule; namely, where the defendant is found to have actually *caused* the suicide, or where the defendant is found to have had a *duty to prevent* the suicide from occurring. *See* Comment, *Civil Liability for Causing or Failing to Prevent Suicide*, 12 LOY. L.A.L. REV. 967, 968 (1979); Annot., 11 A.L.R.2d at 756.

The first exception involves cases where a tortious act is found to

have caused a mental condition in the decedent that proximately resulted in an uncontrollable impulse to commit suicide, or prevented the decedent from realizing the nature of his act. *See* W. PROSSER, *supra* § 44 at 280–81; Comment, *supra*, 12 LOY. L.A.L. REV. at 975–83; Schwartz, *supra*, at 219–36; Annot., 11 A.L.R.2d at 756. Such cases typically involve the infliction of severe physical injury, or, in rare cases, the intentional infliction of severe mental or emotional injury through wrongful accusation, false arrest or torture. Comment, *supra*, 1978 ARIZ. ST. L.J. at 576; Annot., 11 A.L.R.2d at 756–74.

This exception also encompasses cases in which a statute prohibiting the sale of certain drugs or liquor was violated by the defendant. In these cases, liability arises both by virtue of direct causation (the drugs or alcohol foreseeably caused a frenzy or uncontrollable impulse to commit suicide), and also out of a breach of what is described as a duty to refrain from knowingly making available the actual means of an individual's self-destruction. Examples of statutes under which liability is imposed are so-called "dram shop acts," and acts regulating the sale of narcotics by pharmacists. Annot., 11 A.L.R.2d at 756, 763–75; *cf.* Schwartz, *supra*, at 237–45 (treating such cases as belonging under the "duty to prevent" exception).

The second exception focuses on the existence of a specific duty of care to prevent suicide. This duty has been imposed as a matter of law, Comment, *supra*, 12 LOY. L.A.L. REV. at 987, on essentially two classes of defendants, both of whom are held to have a special relationship with the suicidal individual. The typical defendant in such cases "is someone who has a duty of custodial care, is in a position to know about suicide potential, and fails to take measures to prevent suicide from occurring." Comment, 1978 ARIZ. ST. L.J. at 581. Specifically, this duty has been imposed on: (1) institutions such as jails, hospitals and reform schools, having actual physical custody of and control over persons; *see* Note, *Custodial Suicide Cases: An Analytical Approach to Determine Liability for Wrongful Death*, 62 B.U.L. REV. 177 (1982); Schwartz, *supra*, at 245–55; Annot., 11 A.L.R.2d at 775–802; Annot., 79 A.L.R.3d 1210 (1977); and (2) persons or institutions such as mental hospitals, psychiatrists and other mental-health trained professionals, deemed to have a special training and expertise enabling them to detect mental illness and/or the potential for suicide, and which have the power or control necessary to prevent that suicide. *See* Comment, *supra*, 1978 ARIZ. ST. L.J. at 581–83; Comment, *supra*, 12 LOY. L.A.L. REV. at 987–95; Schwartz, *supra*, at 245–55; Annot., 11 A.L.R.2d at 775–802; Annot., 17 A.L.R.4th 1128 (1982).

As detailed below, although the plaintiff's allegations are not

clearly expressed, we will consider her writ as raising both a direct causation theory of negligence of the kind described in the first exception, and a claim under the second exception, that the decedent breached a duty she had to prevent the decedent's suicide.

The plaintiff has alleged that the defendant's legal representation of the decedent was negligent, thereby causing his wrongful conviction, incarceration, and death by suicide, in the sense that "but for" the defendant's negligence, the decedent would not have died. The plaintiff has also asserted that the defendant had access to a psychological evaluation of the decedent attached to a probation department report, in which, she contends, the possibility of his suicide in the event of his incarceration was discussed. The plaintiff argues that the decedent's suicide was therefore foreseeable, and that the defendant breached a duty she had to file certain post-conviction motions which would have prevented his incarceration and subsequent suicide.

It remains unclear, however, whether the duty thus asserted to have been breached is viewed by the plaintiff as having been a specific, quasi-independent duty to prevent the decedent's "foreseeable" suicide, or whether the plaintiff is simply arguing that the defendant's failure to file these motions was part of her overall professional negligence. We have treated this as an independent argument involving a claimed duty to prevent suicide, in order to give the plaintiff the benefit of an analysis under both "prongs" of the case law on civil liability for suicide.

Our review of the case law and scholarly commentary persuades us that the professional negligence complained of in this case could never be fairly viewed as fitting within the first exception to the general rule that suicide constitutes an independent intervening cause precluding liability on the part of a defendant. As discussed above, that exception is very narrow, allowing recovery in tort only where the defendant has caused a severe physical injury to the victim which leads to extraordinary mental incapacity resulting in suicide, *see Orcutt v. Spokane County*, 58 Wash. 2d 846, 364 P.2d 1102 (1961); or where the defendant intentionally and maliciously has tormented the victim into a suicidal state, *see Cauverien v. De Metz*, 188 N.Y.S.2d 627 (N.Y. Sup. Ct. 1959). Essential and central to such cases is either the actual infliction of severe bodily injury by the defendant, or the willful infliction of extreme emotional distress, neither of which could ever be viewed as characterizing the negligent performance of the practice of law.

If we turn to the second recognized exception, involving a duty to prevent suicide, we conclude that the plaintiff again has failed to

show sufficient similarities between the defendant in this case and either of the two classes of individuals which have been held to have such a duty of care. We find fundamentally characteristic of these two types of defendants a pre-existing duty of care and protection which is imposed either because an institution has actual physical custody of, and substantial or total control over, an individual (*see, e.g., McBride v. State*, 277 N.Y.S.2d 80, 88–89 (N.Y. Ct. Cl. 1967), *aff'd*, 30 App. Div. 2d 1025, 294 N.Y.S.2d 265 (1968) (State training school); *Dezort v. Village of Hinsdale*, 35 Ill. App. 3d 703, 709, 342 N.E.2d 468, 473 (1976) (jail)); or because the institution is a hospital or the individual is a specially trained medical or mental health professional, who has the precise duty and the control necessary to care for the physical and/or mental well-being of a patient (*see Meier v. Ross General Hospital*, 69 Cal. 2d 420, 424, 71 Cal. Rptr. 903, 907, 445 P.2d 519, 523 (1968); *Farrow v. Health Serv. Corp.*, 604 P.2d 474, 477 (Utah, 1979)).

Even in the case of individual psychiatrists, "[c]ommentators have suggested that imposing liability . . . is only appropriate if his patient is hospitalized at the time of the suicide, because a psychiatrist does not have *sufficient control* over the non-hospitalized patient to prevent his suicide." (Comment, *supra*, 12 LOY. L.A.L. REV. at 993 (footnotes omitted) (emphasis supplied)).

It goes without saying that a lawyer does not have physical custody of a client. Neither can an attorney be said to have the ability either to control the actions of a client or to determine the outcome of the largely discretionary functions of trial judges and juries. Of course, the decedent had the right to expect that the defendant's representation of him be within the range of competence required of attorneys representing criminal defendants, *see State v. Staples*, 121 N.H. 959, 961, 437 A.2d 266, 267 (1981); *cf. Parker v. North Carolina*, 397 U.S. 790, 797–98 (1970), and the defendant's failure to exercise reasonable care, ordinary skill and knowledge might well give rise to a suit for legal malpractice. *See* Annot., 53 A.L.R.3d 731, 732 (1973).

It is clear, however, that the professional skills expected of an attorney are those arising out of legal training and experience, and do not include either the ability to diagnose the psychological state of a client or to make competent judgments regarding the weight of, or appropriate responses to, any psychological evaluations which may have been made by others in the course of the sentencing process. Anyone who has witnessed involuntary commitment hearings or the conduct of an insanity defense in a criminal case can attest that it is commonplace for even professionals trained in psychiatry and

the treatment of mental health problems to disagree on the existence of psychological problems, their diagnosis, and their treatment.

An additional requirement in cases involving a duty to prevent suicide is that the suicide was, or should have been, foreseen by the custodial institution or specially trained professional. The plaintiff in the case at hand has argued that the decedent's suicide in the event of his incarceration was foreseeable to the defendant attorney because of certain comments contained in a psychological evaluation attached to the probation department's report on the decedent.

Our review of the materials which were available to trial counsel and the court, however, calls into question the plaintiff's claim that a suicide by the decedent was mentioned as being a possibility in the event of his incarceration. In addition, one referring to those materials might well conclude that the decedent, whose history of misuse and abuse of drugs was well documented, would be safer in a custodial setting. This is but an illustration of the reasons underlying our judgment that a lawyer does not possess the special skills required under the second exception to the general rule of non-liability.

Without determining whether these exceptions are valid in New Hampshire, our review of cases decided in other jurisdictions and of legal literature thus convinces us that the present case falls within no previously recognized exception to the general rule that civil liability for the suicide of another is inappropriate.

We now consider whether we should, in effect, create a new exception by declaring that legal malpractice may, as a matter of law, be a legal or proximate cause of suicide, by holding that a lawyer's duty of representation extends to protecting a client from his suicidal tendencies. As noted above, it is abundantly clear that the defendant attorney in this case had a duty to provide adequate legal representation to the defendant. We will assume for the purposes of this argument, that "but for" the defendant's breach of this duty, the decedent's suicide would not have occurred. There remains, however, the question of legal, or what is occasionally termed "proximate", cause; namely,

> "the question whether the defendant should be legally responsible for what he has caused. Unlike the fact of causation, with which it is often hopelessly confused, this is essentially a problem of law. . . . [T]his becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the

defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences."

W. PROSSER, *supra* § 42, at 244.

■ We have recognized in the past that "[n]egligence is a relational concept . . . . The legal quality of an act is determined by considering upon what persons and in what way it might be expected to take effect." *Flynn v. Gordon*, 86 N.H. 198, 201, 165 A. 715, 717 (1933). "Duty and foreseeability are inextricably bound together. 'The risk reasonably to be perceived defines the duty to be obeyed.'" *Corso v. Merrill*, 119 N.H. 647, 651, 406 A.2d 300, 303 (1979) (quoting *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928)). We have held that "liability for negligence is imposed only for injuries resulting from the *particular hazard against which the duty of due care required protection to be given.*" *Flynn v. Gordon*, 86 N.H. at 202, 165 A. at 717 (emphasis supplied).

■ We have considered whether, as a matter of sound public policy, it is appropriate to extend liability for legal malpractice to the kind of harm suffered by the decedent in the present case by declaring that the defendant's duty encompassed avoidance of such harm. "The decision to impose liability reflects a judicial determination that 'the social importance of protecting [the plaintiff's interest] outweighs the importance of immunizing the defendant from extended liability.'" *Libbey v. Hampton Water Works Co.*, 118 N.H. 500, 502, 389 A.2d 434, 435 (1978) (*quoting Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U.L. REV. 722, 740 (1976)).

■ As we have already stated, we do not believe that lawyers generally have either the expertise or the training necessary to judge or foresee that a client will commit suicide, or to fashion appropriate responses to such a risk. It follows that such a risk should not be found to be a hazard against which a lawyer can fairly be said to have the duty to guard. We find the connection between negligence in the practice of law, and the harm which befell the decedent in this case, to be simply too attenuated to impose legal liability on the part of the defendant. To hold otherwise would undoubtedly open the floodgates of unexpected and inequitable liability on the part of attorneys. Neither are we unmindful of the fact that attorneys, if exposed to such liability, would naturally be discouraged from representing what may be a sizeable number of depressed or unstable criminal defendants, in the fear that it would later be alleged that one such client committed suicide out of de-

spondence over a "wrongful" conviction based on inadequate represen-
tation.

 For the foregoing reasons, we hold that the plaintiff's wrong-
ful death action against the defendant should have been dismissed.

*Reversed.*

All concurred.