Herbert ALLEYNE, Jr.,
Plaintiff, Appellee,

v.

SCANDINAVI INN, INC.,
Defendant, Appellee,

Edews, Inc., Defendant, Appellant.

Herbert ALLEYNE, Jr.,
Plaintiff, Appellee,

SCANDINAVI INN, INC.,
Defendant, Appellant.

Nos. 91–1813, 91–1814.

United States Court of Appeals,
First Circuit.

Heard Jan. 8, 1992.

Decided Jan. 29, 1992.

Andrew D. Dunn with whom Timothy S. Reiniger, and Devine, Millimet & Branch,

Professional Ass'n, Manchester, N.H., were on brief, for defendant, appellant Edews, Inc.

Brian T. McDonough, Manchester, N.H., for defendant, appellee cross appellant Scandinavi Inn, Inc.

David J. KillKelley with whom Law Offices of David J. KillKelley, P.C., Gilford, N.H., was on brief, for plaintiff, appellee, Herbert Alleyne, Jr.

Before TORRUELLA, Circuit Judge, BAILEY ALDRICH and CAMPBELL, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Caught in a heavy snowstorm on the evening of January 2, 1987 plaintiff Herbert Alleyne, Jr. cut short his journey in search of winter sports and sought lodging in an inn maintained by defendant Edews, Inc. in Campton, New Hampshire. He was informed by the Spinneys, the managers, that there were no vacancies, but that for $10 he could have the use of a mattress in the second floor sitting room. He paid, but did not register at the desk, and did not see a bell and a sign to ring for service. He did not ask to be shown the mattress, but remained downstairs in the lounge until it closed. He then, taking the testimony most favorable to him, went upstairs to find his mattress, but, instead, found three mattresses, all occupied by sleepers. He went back to find the Spinneys, but could not; nor did he see the sign about ringing for service. He returned upstairs and then proceeded through two fire doors, not seeing the sign forbidding entry, into that part of the building that was owned and occupied by defendant Scandinavi Inn, Inc. He there saw a door partly open and, on knocking and receiving no reply, entered into what has been described as a model room, and found it unoccupied. This had a living room and a bathroom, and steps leading to a balcony loft, where there was a bed. The balcony had a 37 inch wall overlooking the living room. There were lighting fixtures by the bed, and lamps and wall switches in the living room, but at that time the only

illumination came from the bathroom, whose door had been removed. This supplied sufficient light, even to the loft—evidently over the balcony wall—that plaintiff made no attempt to turn on any other. Seeing that the bed had a spread, but no bedding, he returned to the sitting room and took the bedding off an apparently intoxicated sleeper. This he carried back to the model room, made up the bed, and went to sleep. Two hours later he awakened, needing to go to the bathroom, but, instead, "took a couple of steps [and] hit the wall ... lost my balance" and fell over.

For the ensuing injury plaintiff sued both Edews and Scandinavi. The jury answered special questions, finding that all parties were negligent, plaintiff 50%, Scandinavi 40%, and Edews 10%. The present appeal is from the court's refusal to direct verdicts for defendants n.o.v. We reverse.

One procedural matter. Plaintiff's complaint contained a number of counts, one being that the model room was improperly designed. At trial plaintiff withdrew this count, stating his position that the design was "dangerous, [but] not unreasonably dangerous." Variously expressed, his position is as follows.

The negligent acts consisted of a failure to (1) show the location of a mattress, (2) give instructions for assistance, (3) warn of the existence of the condominium area, and (4) close and lock the door to the model room in which the accident occurred.

Before considering these contentions we recite further facts. Scandinavi was in the process of converting that part of its building not occupied by Edews into condominiums from the previous use as an inn. The so-called model, or demonstrator, was one of eight similar rooms. Scandinavi's owner, called by plaintiff, and uncontradicted, stated there had been guests "a thousand times" without any previous injuries.

This testimony coincides with plaintiff's abandonment of the count that the room was unreasonably dangerous. Quite apart from the fact that there were several available lights, plaintiff, without needing to supplement the bathroom light, had made up the bed while standing between it and the balcony wall.[1]

Turning to plaintiff's itemized list of actionable negligence, (1) the failure to show the location of the mattress had no connection with the accident. Plaintiff found the mattress. What possible difference would it have made if he had been shown it before? (2) Much testimony was devoted to plaintiff's not having been shown the bell, and how to obtain the assistance of the Spinneys after hours. At best, assistance might have prevented his invasion of the model room. We will consider (2), accordingly, with (3) and (4), that defendants are liable for not having barred him therefrom.

It is apparent from plaintiff's testimony that it was on his conscience that he had been told there were no available rooms, and that he had paid only for a mattress, and that even this was a favor. He sought to excuse himself for appropriating a room on the ground that he had become very friendly with the Spinneys during the evening. There could be a serious question whether there was any reason for either defendant to foresee that an uninvited guest, cf. *Ouellette v. Blanchard*, 116 N.H. 552, 557, 364 A.2d 631, 634 (1976), would wander to an entirely different part of the building, separated by two fire doors[2] and take over a room, and we might well question counsel's assertion that plaintiff was "forced," and had "no reasonable choice." We do not, however, reach this question. How was it negligent to permit plaintiff's going to a place that was "not unreasonably dangerous?"

Plaintiff's talk about dangerous but not unreasonably dangerous, is meaningless. All places, even a set of stairs, are dangerous to a degree. The determinative factor

---

**1.** Counsel does not create a case by contributing in his brief that the room was "dimly-lit." Even less did plaintiff's hotel management expert by hypothesizing premises that were "dark."

"There were no lights; [he] could not find any lights."

**2.** Seemingly it was defendant's fault that plaintiff did not see the no-entry notice.

is reasonableness versus unreasonableness. It is improper for plaintiff, having conceded below that the room was not unreasonably dangerous,[3] to assert in his brief, "Mr. Alleyne was injured because the negligence of Edews and Scandinavi forced him to seek sleeping quarters *in unfamiliar surroundings* to which a reasonable innkeeper and condominium developer would not have permitted a hotel guest to have access." (Emphasis in original.) It is also improper to contend, "Whether a condition or activity is inherently dangerous as to call for precautions is a question of fact to be determined by the trier of fact." Plaintiff had more fairly stated his claim in his Summary of the Argument.

> Had Edews and Scandinavi performed their duty to Mr. Alleyne, it is more likely than not that he would have been sufficiently familiar with his surroundings to have avoided the sort of injuries he sustained.

The duties that plaintiff's hotel expert asserted were either to take plaintiff to the room and show it to him, or to keep him from it. As to the first, we ask what would plaintiff have been shown that he did not see for himself on one entry and step-climbing, let alone two? What could be more fully patent than a loft with a three foot wall?

As to preventing plaintiff from going to the room altogether, plaintiff's claim is equally invalid. True, if he had not gone to the room, he would not have fallen over the wall. But this is to confuse cause with the occasion. *See Saunders v. Boston & Maine R.R.*, 82 N.H. 476, 477, 136 A. 264, 265 (1927). The doctrine of proximate cause, of which plaintiff makes much, does not create liability; it merely traces or marks the consequences of a negligent act or of a breach of duty to act. Here all plaintiff's charges are to failure to act. But there was no duty to stop plaintiff from occupying the model room unless that was an unreasonably dangerous place to be. "Liability for negligence is imposed only for injuries resulting from a particular hazard against which the duty of due care required protection to be given." *McLaughlin v. Sullivan*, 123 N.H. 335, 342, 461 A.2d 123, 127 (1983). Where there was no original misconduct, and no hazard, we need not consider defendants' reference to the erudite discussion of causation in Prosser & Keeton, *The Law of Torts*, (5th ed. 1984) 264.[4] The rooms had been rented safely a thousand times, and there was no basis for asking defendants to pay an uninvited guest for the thousand and one night.

*Reversed.* Judgment to be entered for defendants.

---

3. Indeed, he particularly assured the court that he would not argue "unreasonably dangerous" to the jury.

4. Prosser, incidentally, omits the early Massachusetts case of *Denny v. New York Central Railroad Co.*, 13 Gray (79 Mass.) 481 (1859).