Rowland v. Manchester                    CV-95-429-M    06/28/96
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Jason Rowland,
      Plaintiff

      v.                                        Civil No. 95-429-M

City of Manchester,
      Defendant


                            O R D E R


      On September 6, 1992, Jason Rowland was working at a Dunkin'

Donuts store in Manchester, New Hampshire.  At approximately 4:45

in the morning, he served a cup of coffee to Michael Rudnick who,

shortly after sitting down to drink the coffee, irrationally

accused Rowland of trying to drug him.  Rudnick then attacked

Rowland, repeatedly stabbing him with a knife.  Fortunately, a

bystander intervened and stopped the attack, but not before

Rowland sustained severe injuries.


      Rowland filed this diversity action against the City of

Manchester, alleging that the City's negligence proximately

caused his injuries.  He says the City had both the opportunity

and duty to arrest Rudnick approximately one month before the

stabbing, when Rudnick was involved in a fight at a Manchester

bar, but because the City breached its duty to arrest Rudnick on that earlier occasion, Rudnick was free to enter the Dunkin' Donuts store and perpetrate the September 6 attack on him. In other words, plaintiff says that if the City had arrested Rudnick in August, he would have been in jail on September 6 and so would not have been able to carry out the assault. Plaintiff seeks damages from the City in the amount of $1,000,000. Presently before the court is the City's motion for summary judgment, in which it claims that: 1) its police officers had no duty to arrest Rudnick prior to the attack; 2) even if the officers did breach a duty to arrest Rudnick, the officers' conduct was not a proximate cause of Rowland's injuries; and, finally, 3) the City is immune from liability for the negligence (if any) of its police officers because they were exercising a discretionary function when they elected not to arrest Rudnick for his role in the August, 1992, bar fight.

As explained below, the City is not liable for the injuries plaintiff sustained at the hands of Michael Rudnick.

**Standard of Review**

2

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). That burden is discharged only if the cited disagreement relates to a genuine issue of material fact. Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).

**Facts**

3

According to plaintiff's complaint, Rudnick was arrested for first-degree assault in 1984. As a result of that incident, and apparently because he suffered from some form of mental illness and posed a danger to himself or others, Rudnick was involuntarily committed to the New Hampshire State (psychiatric) Hospital for two years, beginning on August 15, 1985. Plaintiff does not allege that Rudnick was involved in any other violent confrontations in the five years between the date of his release from involuntary care in 1987 and the bar fight in August of 1992.

It is undisputed that in August, 1992, Rudnick was involved in a bar fight with Walter Buckley, the owner of Buckley's Billiards, in Manchester. Apparently, Rudnick (who had known Buckley for years) threatened Buckley and then refused to leave the premises. A fight ensued, during which Rudnick sustained a broken jaw. Police responded to the incident and, according to plaintiff, Buckley told them of Rudnick's threats and recent unspecified "bizarre and dangerous behavior." Complaint at para. 21. Plaintiff claims that the responding police officers told Buckley that they "would not be able to do anything relative to Buckley's complaint because Buckley had engaged in an altercation

4

with Mr. Rudnick." Complaint at para 23. Although they had reliable information that Rudnick (and Buckley) had engaged in assaultive behavior, the officers elected not to arrest either of them.[1]

Approximately one month later, Rudnick attacked and seriously injured plaintiff.

## Discussion

Plaintiff does not claim that the City, through its police officers, breached any <u>statutory</u> duty to arrest Rudnick following the fight at Buckley's Billiards.

> Rather, plaintiff's claims are based solely on the common law duty owed by the Manchester Police Department to him as a member of the general public and their breach of that duty in failing to act with reasonable prudence in arresting an individual known to

---

[1] Accepting as true the allegations in plaintiff's complaint, it appears that Rudnick was guilty of a violation (i.e., simple assault) for having engaged in the fight with Buckley. <u>See</u> RSA 631:2-a II (providing that a fight entered into by mutual consent constitutes simple assault and is a violation rather than a misdemeanor). Under New Hampshire law, police officers are not required to arrest someone for a violation, even if the violation is committed in the officer's presence. The decision to make a warrantless arrest for a misdemeanor or a violation, even if the officer suspects that the person may cause "further personal injury or damage to property," is committed to the officer's sound discretion. RSA 594:10 I.

5

> them to be psychotic after the individual had committed criminal acts which had been brought to their attention by a complaining victim.

Plaintiff's Memorandum in Support of its Objection to Defendant's Motion for Summary Judgment at 8. Consideration of defendant's dispositive motion in the negligence action begins with an examination of the alleged duty owed by the City to the plaintiff. If a duty existed and if the City breached that duty, the court must then determine whether that breach can be said, as a matter of law, to have proximately caused plaintiff's injuries.

I.    The City's Duty to Plaintiff.

Under applicable New Hampshire law, "[c]ities and towns have not been, and are not now, guarantors of public peace, safety and welfare." Doucette v. Town of Bristol, 138 N.H. 205, 210 (1994). Nevertheless, there are situations in which municipalities, through their agents, are required to take certain steps to protect members of the public from reasonably foreseeable risks. The New Hampshire Supreme Court addressed such a situation in Weldy v. Town of Kingston, 128 N.H. 325 (1986).

6

In Weldy, police officers in Kingston, New Hampshire, stopped a vehicle for speeding. They discovered that its occupants, five teenagers under the legal drinking age, had beer in the car and, thus, were unlawfully transporting alcohol in violation of a New Hampshire statute. Although the officers believed that each of the teenagers had had something to drink, because none appeared to be impaired the officers simply confiscated the beer and permitted them to leave. Later that evening, after purchasing more beer in Massachusetts, the teenagers were involved in a one car accident. One of them, a sixteen-year old girl, was killed. Another girl sustained serious injuries and a third passenger, a teenage boy, sustained minor injuries.

The estate of the deceased girl brought suit against the town, claiming that the police officers breached their duty to arrest or, at a minimum, detain and notify the teenagers' parents when the officers realized that they were unlawfully in possession of alcohol. The estate also claimed that the town's negligent failure, through its officers, to perform that duty proximately caused the subsequent accident. In considering whether the officers breached a duty of care owed to the

plaintiffs, the New Hampshire Supreme Court noted that "[t]he test of due care is what reasonable prudence would require under similar circumstances," Id. at 330-31, and that N.H. Rev. Stat. Ann. Ch. ("RSA") 180:2, imposes a mandatory duty upon law enforcement officers to arrest any person found in the act of illegally transporting alcohol. Accordingly, the court concluded that the Kingston police officers' failure to arrest the teenagers did breach a statutory duty of care. Id. at 331.

Moreover, in dicta, the court added the following broad comment regarding the scope and nature of the officers' duty:

> [W]e believe that, regardless of any statutory duty, action in accordance with the town's policy [which did not require police officers to detain teenagers found illegally possessing alcohol] was a violation of the common law duty of due care. Police officers are obligated to protect the general public, and reasonable prudence dictates that teenagers illegally transporting alcohol be detained. The foundation of a cause of action for negligence is the doctrine of foreseeability. "Duty and foreseeability are inextricably bound together." Teenagers who are released after illegally drinking and driving foreseeably present a danger to the public and to themselves, and due care mandates that they be detained and their parents notified.

Id. at 331 (citation omitted).

8

Understandably, plaintiff focuses upon that language as support for his claim that the City of Manchester, through its police officers, had an identical common law duty to arrest Rudnick following the fight at Buckley's Billiards. He also argues that the officers at the scene should be charged with the police department's knowledge of Rudnick's past behavior and involuntary hospitalization (or, at a minimum, that they had a duty to investigate his background before deciding not to arrest him for assault). Plaintiff concludes that, given their actual and implied knowledge, the officers on the scene at Buckley's knew or should have known that Rudnick posed a foreseeable risk of harm to the community if not immediately taken into custody on an assault charge.

Generally, people are not liable for negligence if they could not have reasonably foreseen that their conduct would likely result in injury to another, or if they acted in a reasonable fashion in light of the anticipated risks. Manchenton v. Auto Leasing Corp., 135 N.H. 298, 304 (1992). Thus, "[d]uty and foreseeability are inextricably bound together. `The risk reasonably to be perceived defines the duty to be obeyed.'"

9

<u>Corso v. Merrill</u>, 119 N.H. 647, 651 (1979) (quoting <u>Palsgraf v.</u> <u>Long Island R. Co.</u>, 248 N.Y. 339, 344 (1928)).

While the <u>Weldy</u> opinion at first seems on point, it actually is neither dispositive of this case nor particularly relevant. Here the duty plaintiff ascribes to the police officers is quite different from that found in <u>Weldy</u>, because here the "risk reasonably to be perceived" that defines the officers' duty involves far more than a common sense recognition that "[t]eenagers who are released after illegally drinking and driving foreseeably present a danger to the public and to themselves . . . ." <u>Weldy</u>, 128 N.H. at 331.

Here, plaintiff necessarily argues that the police officers should first be charged with the City's institutional knowledge of Rudnick's past mental health history and then, based on that knowledge, as well as the facts reported by Buckley, and the fact that Rudnick was involved in a bar fight, the officers should have reasonably perceived a risk to the public should Rudnick not be arrested for assault. The risk the officers should have perceived cannot, of course, be that everyone involved in a minor bar fight poses a future assault risk to the public warranting

10

protective arrest and detention.  Rather, plaintiff must be suggesting a more limited risk pool — that people in bar fights with a history of mental illness foreseeably present a danger to the public and themselves because those people likely continue to suffer from a mental disease or defect which renders them dangerous.  A number of obvious difficulties arise if that is the risk that defines the duty plaintiff would impose on the City's police officers, not the least of which is that police officers are generally not schooled in psychiatry or psychology, and are not mental health professionals.  Police officers are generally ill-equipped to make on-the-spot mental health diagnoses, or to make behavioral predictions based upon the existence of mental illnesses, past or present.

The New Hampshire Supreme Court's opinion in McLaughlin v. Sullivan, 123 N.H. 335 (1983) also undermines plaintiff's concept of the duty owed by the City's police officers.  In that case, Lawrence McLaughlin retained the services of Attorney Sullivan to defend him against several criminal charges.  Following a jury trial, McLaughlin was found guilty on all four charges pending against him and was sentenced to a term of imprisonment.  After

11

sentencing, McLaughlin was transported to a county jail where, shortly after his arrival, he hanged himself.

McLaughlin's estate brought a wrongful death action against Attorney Sullivan, alleging that she negligently failed to file post-trial motions requesting a stay of sentence and/or bail pending appeal. The estate claimed that but for Attorney Sullivan's alleged negligence, McLaughlin would not have been detained in jail and, if released, would not have killed himself. As part of its case, the estate claimed that Attorney Sullivan had access to a psychological evaluation of the decedent, which specifically noted the possibility of McLaughlin's suicide if he were incarcerated. Accordingly, the estate argued that McLaughlin's death was reasonably foreseeable by Attorney Sullivan, giving rise to a duty on her part to file post-conviction motions necessary to obtain McLaughlin's post-conviction release, thereby avoiding his suicide.

The New Hampshire Supreme Court did not accept the estate's view of the duty owed by Attorney Sullivan to her client, and ruled that the trial court should have dismissed the wrongful death action. Of particular significance to this case are the

12

court's observations regarding an attorney's duty to recognize and appreciate the significance of a client's mental health problems:

> It is clear, . . . that the professional skills expected of an attorney are those arising out of legal training and experience, and do not include either the ability to diagnose the psychological state of a client, or to make competent judgments regarding the weight of, or appropriate responses to, any psychological evaluations which may have been made by others in the course of the sentencing process. Anyone who has witnessed involuntary commitment hearings or the conduct of an insanity defense in a criminal case can attest that it is commonplace for even professionals trained in psychiatry and the treatment of mental health problems to disagree on the existence of psychological problems, their diagnosis, and treatment.

McLaughlin v. Sullivan, 123 N.H. at 340-41. Even accepting that police officers are probably better trained than lawyers to recognize and appreciate the varied manifestations and implications of mental illness, still, police officers are not mental health professionals charged with the duty to reasonably diagnose mental illness or predict behavior based on mental illness. Even if the officers who responded to the fight at Buckley's knew (or should have known) of Rudnick's history of mental illness, his previous involuntary commitment, and his violent behavior approximately eight years earlier, that

13

knowledge, without more, still would not give rise to a duty on their part to arrest Rudnick for simple assault. As observed by Justice Cardozo nearly 70 years ago:

> [T]he orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty. One who jostles one's neighbor in a crowd does not invade the rights of others standing at the outer fringe when the unintended contact casts a bomb upon the ground. The wrongdoer as to them is the man who carries the bomb, not the one who explodes it without suspicion of the danger. Life will have to be made over, and human nature transformed, before prevision so extravagant can be accepted as the norm of conduct, the customary standard to which behavior must conform.
>
> * * *
>
> Negligence is not a tort unless it results in the commission of a wrong, and the commission of a wrong imports the violation of a right, in this case, we are told, the right to be protected against interference with one's bodily security. But bodily security is protected, not against all forms of interference or aggression, but only against some. One who seeks redress at law does not make out a cause of action by showing without more that there had been damages to his person. If the harm was not willful, he must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended.

Palsgraf v. Long Island R. Co., 248 N.Y. 339, 343-45, 162 N.E. 99, 100-01 (1928).

14

Rowland basically claims that the police officers had a duty to recognize that, because of Rudnick's past mental condition and his involvement in a simple assault, he posed an imminent risk of injury to himself or others. And, armed with that recognition, the officers had a concomitant duty to take him into custody (for assault, says plaintiff) where ordinarily they might have properly exercised their discretion and elected not to arrest him. Cf., State v. Merski, 115 N.H. 48, 50 (1975) (noting that police officers have "general discretion . . . to consider all circumstances in determining whether to formally charge a person with a crime."); RSA 594:10 (discussing the scenarios under which an officer may arrest someone for having committed a misdemeanor or violation out of the officer's presence).

The rule of law which plaintiff seems to be advocating would require police officers to routinely arrest and detain people who have histories of mental illness when, in the ordinary course, the officers would not effect an arrest. At a minimum, plaintiff's view of the law would require police officers to engage in on-the-spot mental health diagnoses and make related predictions of behavior based on those diagnoses. Plaintiff's reasoning seems based on the notion that people with mental

15

health histories who became involved in physical altercations must be taken into custody, not for the offense they might have committed, but because police officers should reasonably foresee that such people can reasonably be expected to commit other, more violent acts, if not arrested.

Although not discussed by the parties, New Hampshire law does provide a procedure by which a person believed to pose a danger to himself or herself, or others, may be involuntarily hospitalized (detained). See RSA Ch. 135-C. However, whether to pursue the involuntary hospitalization of someone is discretionary, rather than mandatory. See RSA 135-C:35. Moreover, plaintiff does not allege that based upon the facts as pled the police officers in this case breached any duty to seek Rudnick's involuntary hospitalization. Instead, plaintiff relies entirely upon an alleged duty to arrest based on Rudnick's role in the fight at Buckley's Billiards and his mental health history. In any event, the facts as pled do not describe circumstances giving rise to a common law duty on the officers' part to seek Rudnick's involuntary commitment to the New Hampshire mental health services system under RSA 135-C:27, et seq. (Rudnick is only alleged to have a history of mental

16

illness, to have been involuntarily committed some seven years before the bar fight, and to have been acting in a "Bizarre" manner several weeks before the assault giving rise to this case.)

As in McLaughlin, supra, the responding Manchester police officers could not have reasonably foreseen that Rudnick would likely injure someone in the future if not immediately arrested on a simple assault charge stemming from the August fight. Even if those officers are charged with knowledge of Rudnick's mental health history (there is no allegation that they had actual knowledge), the skills expected of them "do not include either the ability to diagnose the psychological state of [an individual], or to make competent judgments regarding the weight of, or appropriate response to, any psychological evaluations" to which they might have access. McLaughlin, 123 N.H. at 335.

Of course, it is always possible that someone involved in a barroom fight might, if not arrested, cause future harm to a member of the general public; violent people do tend to behave violently. However, "[n]ot every risk that might be foreseen gives rise to a duty to avoid a course of conduct; a duty arises

17

because the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous. `Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another.'" Manchenton v. Auto Leasing Corp., 135 N.H. 298, 305-06 (1992) (quoting W. Keeton et at., Prosser and Keeton on the Law of Torts § 30, at 164-65 (5th ed. 1984)). Whether a defendant's conduct creates a sufficiently foreseeable risk of harm to others, thereby warranting charging him with a duty to avoid such conduct, is a question of law. Id. at 304.

Future risk to the general public (if any) posed by someone who has engaged in a relatively minor bar fight (even if he or she has a history of some form of mental illness) is far less obvious and less immediate than the threat posed by teenagers consuming alcohol and operating a motor vehicle. Cf. Weldy, supra. Moreover, recognition of such a risk normally requires professional training and skill. While police officers could well be duty bound to take someone into custody in order to protect the police when circumstances are such that a reasonable police officer should recognize the risk (obvious delusional behavior, or uncontrollable behavior, threats, etc.), those

18

circumstances are not alleged here. For those reasons, the New Hampshire Supreme Court's dicta in <u>Weldy</u> (regarding a <u>common law</u> duty to arrest in certain situations) is not applicable here.

Based upon the undisputed facts presented in this case, the court holds that, as a matter of law, the responding Manchester police officers did not breach any common law duty owed to members of the public when, in the exercise of their discretion, they elected not to arrest Rudnick based on the August, 1992, incident at Buckley's Billiards. Accordingly, the City is entitled to judgment as a matter of law.

## II. <u>Proximate Causation</u>.

Even if the court were to accept plaintiff's allegation that the City's agents breached a common law duty owed to the public when they elected not to arrest Rudnick, that conduct cannot be said to have proximately caused plaintiff's subsequent injuries at Rudnick's hands. At this point, it is important to distinguish between "but for" causation and "legal" or "proximate" causation. Again, New Hampshire law applies and the New Hampshire Supreme Court has noted:

19

> Unlike the fact of causation, with which it is often
> hopelessly confused, [proximate causation] is
> essentially a question of whether the policy of the law
> will extend the responsibility for the conduct to the
> consequences which have in fact occurred.  Quite often
> this has been stated, and properly so, as an issue of
> whether the defendant is under any duty to the
> plaintiff, or whether his duty includes protection
> against such consequences.

McLaughlin v. Sullivan, 123 N.H. at 341-42 (quoting W. Keeton, et al., Prosser and Keeton on the Law of Torts § 42, at 244 (4th ed. 1971)).  Accordingly, "[t]he decision to impose liability reflects a judicial determination that `the social importance of protecting [the plaintiff's interests] outweighs the importance of immunizing the defendant from extended liability.'"  Id. at 342 (citation omitted).

Initially, whether proximate cause exists is an issue for the court to resolve.  If, however, the court determines that the evidence is such that a reasonable person could find legal fault or causation, the issue is submitted to the jury.  MacLeod v. Ball, 140 N.H. 159, ___, 663 A.2d 632, 633 (1995); Hurd v. Boston & Maine R.R., 100 N.H. 404, 408 (1957).  Here, however, the court is persuaded that no reasonable person could find that the Manchester police officers' failure to arrest Rudnick in August of 1992 proximately caused Rudnick's attack on plaintiff roughly

20

one month later.  While there is no New Hampshire precedent directly on point, that conclusion is supported both by reason and persuasive decisions in other jurisdictions.  See, e.g., Hakken v. Washtenaw County, 901 F.Supp. 1245 (E.D. Mich. 1995) (failure of sheriff deputies to arrest 16-year-old boy following his assault upon his 12-year-old girlfriend did not proximately cause the boy's fatal shooting of the girl 10 days later); Fleming v. California, 41 Cal.Rptr.2d 63 (1995) (parole officer's failure to arrest parolee for leaving state without permission did not proximately cause the parolee's subsequent kidnapping, rape, and murder of victim), cert. denied, 116 S.Ct. 775 (1996); Gonzalez v. City of Bridgeport, 1993 WL 197874, slip op. (Conn.Super. June 2, 1993) (failure of police officers to arrest three gang members following reports that they had assaulted a young boy did not proximately cause the subsequent murder committed by those three individuals).

While one might plausibly suggest that "but for" the officers' failure to arrest Rudnick, plaintiff would not have been attacked by him, it does not reasonably follow that the officers' decision not to arrest Rudnick proximately caused that subsequent attack.

21

III. Municipal Immunity for Discretionary Acts.

Finally, even if the court were to find that the City, acting through its police officers, breached a duty to arrest Rudnick and that the breach proximately caused plaintiff's later injuries, the City would still be immune from liability. The recent New Hampshire Supreme Court decision in Goss v. City of Manchester, 140 N.H. 449 (1995), makes that abundantly clear.

In Goss, the estate of Kimberly Goss sued the City of Manchester, claiming that the City's negligence proximately caused her rape and murder at the hands of David Vandebogart. In 1989, officers of the Manchester Police Department arrested Vandebogart on charges of simple assault and criminal threatening. At the time of his arrest, Vandebogart was on parole and under the supervision of the New Hampshire Department of Corrections. The conduct warranting arrest violated his parole, but Manchester officials failed to notify Vandebogart's parole officer of the violation. Following his arrest, Vandebogart was released on personal recognizance bail and, approximately 2 months later, he raped and brutally murdered Kimberly Goss.

22

The Goss Estate claimed that the Manchester police Department negligently failed to take appropriate measures at the time of Vandebogart's arrest to assure that he was not released on bail. The Estate also asserted that the police department's negligence proximately caused Ms. Goss's subsequent murder. The New Hampshire Supreme Court eventually concluded that the municipality was not liable for the alleged negligence of its officers, reasoning that under New Hampshire statutory law, notifying Vandebogart's parole officer was a discretionary, not a mandatory, obligation.

The court summarized New Hampshire's law of municipal immunity for certain torts committed by municipal employees as follows:

> Municipal governments are immune from tort liability
> arising out of the negligent conduct of municipal
> employees "[w]hen the particular conduct which caused
> the injury is one characterized by the high degree of
> discretion and judgment involved in weighing
> alternatives and making choices with respect to public
> policy and planning . . . ." They may be liable,
> however, when such actions are nondiscretionary or
> ministerial.

Goss v. City of Manchester, 140 N.H. at ____, 669 A.2d at 786 (quoting Gardner v. City of Concord, 137 N.H. 253, 257 (1993)).

23

The court then concluded that, "the decision to notify Vandebogart's parole officer remained a discretionary one, and is thus entitled to discretionary immunity." Id. at 787.

Like the police officers in Goss, the officers in this case were exercising a "high degree of discretion and judgment" when they chose not to arrest Rudnick following the fight at Buckley's. Accordingly, even if the officers had a common law duty to arrest Rudnick, it was a discretionary duty and the municipality would remain immune from liability for their negligence.[2]

**Conclusion**

For the foregoing reasons, the City of Manchester, acting through its police department, did not have a common law duty to arrest Michael Rudnick following the August, 1992, fight at Buckley's Billiards. Moreover, even if such a duty existed and

_____

[2] Because the Manchester police officers had no statutory duty to detain Rudnick, this case is distinguishable from Weldy, supra, and the municipal "discretionary function" exemption from tort liability is applicable. In Weldy, as noted above, the New Hampshire Supreme Court held that the officers had a non-discretionary statutory duty to arrest the minors who were discovered in unlawful possession of alcohol. Accordingly, the principle of municipal immunity for discretionary acts of municipal employees was not at issue.

24

the police officers breached that duty, the City still cannot be held liable for the injuries Rudnick inflicted upon plaintiff. First, the officers' conduct cannot reasonably be said to have proximately caused plaintiff's injuries. Moreover, because the officers were exercising a high degree of discretion and judgment when they decided not to arrest Rudnick for his role in the fight, the municipality is immune for any tort liability arising out of the conduct of those officers.

Defendant's motion for summary judgment (document no. 6) is granted. The Clerk of the Court is instructed to enter judgment in favor of defendant and close the case.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

June 28, 1996

cc:  Peter J. Duffy, Esq.
     Robert E. McDaniel, Esq.

25